# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-cv-22973-BLOOM/LOUIS

MAI LIS BAHR,

    Plaintiff,

v.

NCL (BAHAMAS) LTD. d/b/a
NORWEGIAN CRUISE LINE,

    Defendant.

_____/

## ORDER

This cause is before the Court upon Defendant's Motion for Extension of Time for Defendant to Disclose Experts and Complete Discovery and for Sanctions Against Plaintiff (ECF No. 61). Defendant's Motion contends that Plaintiff's expert disclosures revealed a multitude of new facts, treaters, medical treatments, injuries, and bases for damages that were never before disclosed by Plaintiff in fact discovery. Defendant seeks exclusion of the previously undisclosed facts and evidence, as well as an enlargement of time within which to conduct discovery. In response, Plaintiff agrees that Defendant's request for an enlargement should be granted but disputes Defendant's entitlement to sanctions. Plaintiff argues that she made her discovery responses in good faith and contends that any failure on her part is harmless because the untimely disclosed information is "within the realm of information reasonably anticipated in a personal injury case" (ECF No. 65).

This matter was referred to the undersigned United States Magistrate Judge by the Honorable Beth Bloom, United States District Judge, to take all appropriate action on all discovery matters (ECF No. 10). A hearing was conducted on the Motion on May 26, 2021, at which the undersigned **GRANTED, in part,** the Motion as follows.

## I. BACKGROUND

This is a maritime personal injury action which arises from an alleged slip and fall on a gangway while exiting one of Defendant's ships in Alaska on July 18, 2018. As a result of this fall, Plaintiff alleges that she suffers from injuries including traumatic brain injury, as well as injuries to her neck and spine.

Plaintiff initiated this suit a year after the fall in July 2019. Defendant served its first set of interrogatories in September 2019 and therein demanded that Plaintiff identify each injury for which she was claiming damages in the case, specifying the part of her body injured, nature of the injury, and description of any activity she claimed she was totally or partially unable to do. Defendant additionally demanded disclosure of all medical care providers who had examined or treated Plaintiff in the last ten years, for the injuries claimed or otherwise; and propounded requests for documents that included all records and reports of doctors for treatment Plaintiff received as a result of the incident, as well as all reports prepared by doctors who examined Plaintiff and may be called to testify in this case.

Plaintiff responded to the interrogatories in October 2019 and supplemented her answers in February 2020. With respect to her injuries, Plaintiff disclosed that she suffers from lower back pain and head and neck injuries, resulting in memory loss, fatigue and nausea, and she additionally disclosed knee pain that has since resolved. Her supplemental interrogatory answers did not disclose any new injuries. In December 2019, Plaintiff was deposed, and she was examined by Defendant's expert.

In 2020, the trial scheduling order was amended to continue trial and extend pretrial deadlines (ECF No. 34). The case was stayed completely in April 2020 due to disruption caused by the COVID-19 pandemic (ECF No. 39). The case was re-opened in October of 2020 and was,

upon the request of Defendant, twice continued and is now set for trial in September 2021. A deadline for discovery was set for June 1, 2021, and dispositive motions are due on June 23, 2021.

Plaintiff timely disclosed her experts and supporting opinions to Defendant on May 7, 2021. She disclosed seven experts. Relevant to the present dispute, Plaintiff disclosed an opinion from Dr. Craig Lichtblau, who offers a life care plan assessment for Plaintiff based on his review of the medical records and discussions with other examiners and treaters. Dr. Lichtblau, himself, additionally examined Plaintiff in December of 2020. His report states that Plaintiff reported urinary incontinence as a result of the accident in her December 2020 examination.[1] Incontinence was not previously disclosed by Plaintiff as an injury resulting from the accident.

Dr. Lichtblau's report further discloses a telephone conversation he had with Plaintiff's treating physician, Dr. Matthew McGirt, in which Dr. McGirt stated that Plaintiff is a candidate for a lumbar fusion surgery and that she will more than likely require the surgery. Dr. McGirt's previously disclosed records of Plaintiff's treatment reflect no such opinion on the need for lumbar surgery, but rather show a projected conservative treatment for her pain. Dr. Lichtblau additionally relies in his report on a conversation with another treating physician, Dr. Aldin Milam, who Dr. Lichtblau says confirmed the need for lumbar surgery. Dr. Lichtblau opines that the cost of such a surgery would be between $100,000.00 and $150,000.00 and reports that Dr. Milam verified this projected cost. Previously disclosed reports by Dr. Milam stated that surgical intervention was not indicated, and that Plaintiff had been so advised.

Plaintiff additionally disclosed an opinion by a radiologist, Dr. Andrew Walker, who ordered an MRI study of Plaintiff's cervical spine and brain in December 2020. Plaintiff's disclosure characterized Dr. Walker as a "treating physician who will offer expert opinions as a

---

[1] Another of Plaintiff's experts similarly disclosed an addendum opinion on May 7, 2021, which references Plaintiff's "urinary difficulties"; his opinion is, Plaintiff explains, derived from Dr. Lichtblau's report.

hybrid witness." Plaintiff's counsel proffered that he retained Dr. Walker as an expert, but when it came time to disclose, Dr. Walker advised counsel that he considers himself a treater. Dr. Walker intends to offer an opinion based on the MRI study he ordered in December 2020, which he compared to a prior scan of Plaintiff's head performed two years prior, just after the accident. Dr. Walker's findings are unremarkable; however, he observes that the majority of mild traumatic brain injury patients are similarly unremarkable. Dr. Walker's treatment of Plaintiff was not disclosed prior to the disclosure of his single-page report on May 7, 2021.

Plaintiff also disclosed a vocational and life care planning expert, Dr. Julianne Frain. In preparation for her report, Dr. Frain requested that Plaintiff obtain a statement of prior earning from the Social Security Administration, and her report relies in part on these documents. Plaintiff seeks recovery in this case for lost wages and loss of earning capacity, and Defendant propounded written discovery demanding disclosure of all earning information. Though not disclosed by Plaintiff in response to any written discovery requests, Plaintiff disclosed to the Defendant's examining psychologist in February of 2021 that she reactivated her real estate license in October 2020, and indeed, she received a commission in January of 2021 for the referral resulting in a sale.

Defendant now challenges Plaintiff's failure to comply with Federal Rule of Civil Procedure 26(a) and (e) to disclose, without even awaiting request, each category of damages claimed, and to supplement its discovery responses in a timely manner. Defendant argues that it is clearly prejudiced by the untimely disclosures and invokes Rule 37(c) for the sanction of exclusion of the offending evidence. Because the prejudice varies with each complained of category of evidence, I have addressed each separately.

## II. DISCUSSION

The Parties agree about the standards applicable to this dispute. Pursuant to Federal Rule of Civil Procedure 26(e)(1), a party has a duty to supplement its discovery responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." If a party fails to provide or supplement its discovery responses under Rule 26(e), "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Such a failure may also result in an order requiring "payment of the reasonable expenses, including attorney's fees, caused by the failure"; the jury being informed of the party's failure; and other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Fed. R. Civ. P. 37(c)(1).

"In determining whether the failure to disclose was justified or harmless, we consider the non-disclosing party's explanation for its failure to disclose, the importance of the information, and any prejudice to the opposing party if the information had been admitted." *Lips v. City of Hollywood*, 350 F. App'x 328, 340 (11th Cir. 2009). Plaintiff's Response generally defends the timing of her disclosures on the basis that they were timely expert disclosures. This contention misses Defendant's argument that the expert disclosures revealed *facts* that were new or contrary to prior discovery responses by Plaintiff, and that Plaintiff failed to timely disclose such facts or information as required under Rule 26.

### A. Plaintiff's Claimed Incontinence

As recounted above, Plaintiff's answer to Defendant's interrogatory on injuries made no mention of incontinence. Nor did Plaintiff disclose to Defendant's examining expert in December 2019 that she suffered from incontinence as a result of the accident. Rule 26 imposed a duty on

Plaintiff to supplement her answers to Defendant's interrogatories in a timely manner. Fed. R. Civ. P. 26. Yet Defendant first learned of Plaintiff's claim of incontinence through her expert disclosures. The fact that Plaintiff suffers from incontinence, which she contends is the result of injuries suffered in the accident, has not been timely disclosed as Rule 26 requires.

Plaintiff defends the untimely disclosure as the result of ignorance, not willfulness. Counsel argues that she did not appreciate the connection between the injury and the incontinence until Dr. Lichtblau specifically asked her about it. Even assuming the validity of this explanation, it does not explain the failure to disclose the incontinence six months earlier when he examined her. The validity of the explanation, moreover, is undermined by the fact that *Defendant's* examining expert asked her about bladder function in December 2019, and she denied any issues with bladder function at that time.

It cannot be meaningfully argued that the failure to disclose this wholly new injury is not prejudicial. Indeed, Plaintiff does not offer any argument that it is not prejudicial, but implicitly suggests that any prejudice may still be cured by affording Defendant additional time for discovery. Defendant avers that had this information been timely disclosed, Defendant could have had its experts opine on the alleged condition, could have potentially retained a urologist or urogynecologist, or could have requested an additional independent medical evaluation of Plaintiff. To suggest that Defendant undertake this discovery *after* experts have been disclosed and just weeks before summary judgment is due utterly disregards this Court's trial scheduling order, which, as noted above, has already been amended multiple times as a result of COVID-related delays.

By contrast, Plaintiff will suffer minimal prejudice by exclusion of evidence of her incontinence. Plaintiff's counsel acknowledged at the hearing that Plaintiff's incontinence is *de*

*minimis* and does not affect Plaintiff's overall claim for damages. Considering the absence of justification for Plaintiff's failure to timely disclose evidence of Plaintiff's incontinence, the relative unimportance of the evidence to Plaintiff's case, and the significant prejudice to Defendant caused by the untimely disclosure, the appropriate sanction is exclusion of the evidence. *See Groves v. Royal Caribbean Cruises, Ltd.*, No. 09-20800-CIV, 2010 WL 11553275, at *1 (S.D. Fla. Dec. 8, 2010) (excluding all evidence regarding plaintiff's medical condition or treatment that was not properly disclosed pursuant to Federal Rule of Civil Procedure 37(c)(1)); *Marine Depot, Int'l, Inc. v. James River Grp., Inc.*, No. 19-CV-24821, 2020 WL 7864100, at *3 (S.D. Fla. Dec. 30, 2020) (precluding plaintiff from introducing at trial any evidence of damages not specifically described in its initial and supplemental disclosures).

At trial, Plaintiff shall not seek to offer evidence that she suffers from incontinence as a result of her accident.

**B. Lumbar Fusion Surgery**

The need for lumbar fusion surgery is claimed to have first been disclosed to Defendant through the expert report of Dr. Lichtblau. Dr. Lichtblau opines, based on his consultations with Dr. McGirt and Dr. Milam and his review of their records, that lumbar fusion surgery would cost $100,000.00 - $150,000.00. At the hearing, Plaintiff's counsel clarified that Dr. Lichtblau will not be offering an opinion as to Plaintiff's *need* for the surgery, only what such a surgery would cost *if needed*. That Plaintiff requires surgery is not an opinion that will be offered by, or solicited from, Dr. Lichtblau because he has not offered that opinion. Dr. Lichtblau merely reports that Plaintiff's other treating physicians told him she did.

Defendant alternatively seeks an opportunity to depose Drs. McGirt and Milam to test the veracity of Dr. Lichtblau's summary of their respective conversations and asks that Plaintiff pay

the expenses for those depositions. As stated at the hearing, this motion is granted, in part on this request: Defendant is afforded leave to depose the doctors outside the discovery period, but at its own expense. Regardless of the timing of the disclosure of their purported opinions to Dr. Lichtblau, the cost of deposing them would be the same now as it would have been earlier. There having been no proffered reason why Defendant's expense to depose the witnesses was exacerbated by the disclosure of their new opinions in the Dr. Lichtblau report, Defendant will bear the cost of deposing the physicians.

### C. Plaintiff's MRI/DTI Scans Performed on December 10, 2020

Defendant avers that new MRI scans were produced for the first time as part of the report of Plaintiff's "hybrid" treating physician expert, Dr. Walker. Defendant claims that these MRIs dating back to December 2020 should have been disclosed earlier as a supplement to Plaintiff's discovery. Plaintiff, however, claims that these MRIs show nothing new or different from the MRIs previously produced. "A failure to timely make required disclosures might be harmless if substantially similar evidence has already been produced." *Rubinstein v. Keshet Inter Vivos Tr.*, No. 17-61019-CIV, 2018 WL 6446575, at *3 (S.D. Fla. Dec. 10, 2018) (citing *Miele v. Certain Underwriters at Lloyd's of London*, 559 F. App'x 858, 861–62 (11th Cir. 2014)); *see also Taylor v. TECO Barge Line, Inc.*, 517 F.3d 372, 380 (6th Cir. 2008) (failure to disclose photographs harmless because similar photographs had been disclosed). Because similar MRIs were previously disclosed, the Court does not find the exclusion of the December 2020 MRIs to be warranted.

In the alternative, Defendant seeks additional time to have its experts review the MRIs and conduct additional discovery. At the hearing, Defendant specified that the MRIs are being sent to two of its current experts for review. To the extent that additional time is needed for these experts to supplement their reports, the opportunity to supplement is not only reasonable but is provided

for under Federal Rule of Civil Procedure 26(e)(2), which requires the supplementation of expert reports prior to the party's pretrial disclosures. Defendant further seeks to have Plaintiff bear any additional costs to be incurred for Defendant's experts to supplement their opinions with this new information. Because these costs have not yet been incurred, and the amount to be incurred is not yet known, the Court cannot assess the reasonableness of the request and finds that shifting such costs would be premature.

### D. Plaintiff's Treating Physician, Dr. Walker

Dr. Walker was first disclosed as both an expert and a treating physician through Plaintiff's expert disclosures, despite Defendant's prior discovery requests demanding disclosure of all medical care providers who had examined or treated Plaintiff and their corresponding records. Plaintiff's counsel explains that he retained Dr. Walker as an expert, and only after the MRIs were taken, and right before expert disclosures were due, did Dr. Walker advised counsel that he considers himself a treating physician.

Defendants seeks to exclude Dr. Walker from testifying at all. The testimony Dr. Walker intends to offer, based on the report attached to the Motion, is an opinion that Plaintiff's MRIs are unremarkable and that this does not defeat the initial diagnosis of mild brain trauma because the majority of people suffering such trauma have similarly unremarkable readings. There is no additional proffered evidence of treatment administered by Dr. Walker beyond the MRIs, already addressed above. Though Dr. Walker may consider himself a treating physician, for purposes of determining whether his opinion was timely disclosed, he falls within the ambit of Rule 26(a)(2) as a witness through whom Plaintiff intends to present evidence under Federal Rule of Evidence 702 as an expert. Accordingly, his report was timely disclosed.

Should the Court allow Dr. Walker's opinions and testimony, Defendant alternatively requested additional time to depose Dr. Walker. Defendant is entitled to depose him pursuant to Federal Rule of Civil Procedure 26(b)(4)(A). Plaintiff does not dispute this and has already offered dates for Dr. Walker's deposition. Defendant will bear its own cost of deposing Dr. Walker.

**E. Plaintiff's Social Security Administration Earnings Statement and Continued Earning from Selling Real Estate**

Lastly, Plaintiff failed to timely disclose and supplement discovery responses with her Social Security Administration earnings statement, her earnings through referrals for real estate sales, and the fact that she reactivated her real estate license in October 2020. Plaintiff's counsel explained that until her vocational and life care planning experts requested the earnings statement for the preparation of her report, Plaintiff had not relied on the statements. Accordingly, the documents were not responsive to Defendant's Requests and she had no obligation to supplement before disclosure of the expert's report. With respect to the real estate license or commissions, no meaningful explanation was advanced for the failure to disclose.

The relevance of these documents and information cannot be disputed; Plaintiff claims lost wages and loss of earning capacity resulting from her injuries, and in order to properly review and rebut Plaintiff's claim for these damages, it is necessary for Defendant to possess the information regarding Plaintiff's employment and earnings. Defendant propounded written discovery demanding disclosure of all earning information, and Plaintiff had a duty to supplement her response to include these 2021 real estate earnings pursuant to Federal Rule of Civil Procedure 26(e). Such information is highly relevant to Plaintiff's claims for lost wages and a loss of earning capacity, and Defendant avers that the untimely disclosure of information regarding employment and earnings severely prejudices its ability to defend against these claims. Moreover, Plaintiff's

cognitive ability has been placed at issue by her, and the apparent ability to sell real estate is relevant to her injuries in addition to her damages.

The evidence here is significant. Without it, Plaintiff's expert is restricted from relying on a piece of her opinion necessary to Plaintiff's damages. Likewise, Defendant's prejudice by not having the earnings—past and current—disclosed has denied it the opportunity to investigate these matters on both liability and damages. Notwithstanding, before ordering the most severe sanction of exclusion, the Court must consider whether a lesser sanction is appropriate and sufficient to redress Defendant's prejudice. Here, I find there is.

In the alternative to striking Plaintiff's lost wages and loss of earning capacity claims, Defendant requested leave to re-depose Plaintiff, at her own expense, in order to learn about her employment and earnings therefrom. Defendant has already incurred the costs of deposing Plaintiff once, and but for her untimely disclosure of continued earnings, Defendant would have no need to re-depose her. Thus, Defendant's request is granted. Defendant may re-depose Plaintiff beyond the discovery period at Plaintiff's own cost. *See Kona Spring Water Distrib., Ltd. v. World Triathlon Corp.*, No. 805-CV-119T-23TBM, 2007 WL 737624, at *3 (M.D. Fla. Mar. 7, 2007) (shifting deposition cost to plaintiff where defendant had to re-depose a witness based on plaintiff's untimely disclosure).

### III. CONCLUSION

For the forgoing reasons, Defendant's Motion is **GRANTED, in part**. Because the Court finds Plaintiff failed to timely disclose information as required by Federal Rule of Civil Procedure 26(e), the undersign finds it proper to shift the reasonable expenses and attorney's fees incurred in bringing this Motion as a result of Plaintiff's failure, pursuant to Federal Rule of Civil Procedure 37(c)(1). The parties were given a briefing schedule to present any dispute over entitlement or the

amount of fees to be shifted to Defendant if they were unable to reach agreement. The deadline to do so has now passed, and no briefing was filed.

**DONE AND ORDERED** in open court in Miami, Florida this 22nd day of June, 2021.

_____
LAUREN LOUIS
UNITED STATES MAGISTRATE JUDGE