**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 19-cv-22973-BLOOM/Louis**

MAI LIS BAHR,

    Plaintiff,

v.

NCL (BAHAMAS) LTD.,
*doing business as* NCL,

    Defendant.
_____/

**ORDER ON MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court upon Defendant NCL (Bahamas) Ltd.'s ("NCL" or "Defendant") Motion for Summary Judgment, ECF No. [78] ("Motion"). The Court has reviewed the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is denied.

**I.   BACKGROUND**

On July 17, 2019, Plaintiff Mai Lis Bahr ("Bahr" or "Plaintiff") initiated the instant action against Defendant for injuries sustained while exiting the Norwegian *Pearl* onto the dock at the port of Skagway, Alaska. Plaintiff was walking down a gangway between the *Pearl* and the dock when she slipped and fell near the end of the gangway, which she alleges was wet and slippery. *See* ECF No. [1] ¶ 8. The Complaint asserts a single count of maritime negligence against Defendant, alleging that Defendant breached its duty of care by "failing to maintain slip resistance materials; failing to provide adequate railings; failing to provide a safe walkway; [] failing to warn Plaintiff of the lack of an adequate railing; by providing a worn slip resistance surface material,

and by failing to warn of the inadequate, and worn, slip resistant surface materials." *Id*. ¶ 9.

Specifically, Plaintiff alleges that Defendant breached its duty by

> A. Allow[ing] passengers, including the Plaintiff **MAI LIS BAHR**, to exit the vessel using a walkway that was known to be wet, without providing a sufficiently dry surface, without handrails and slip resistant materials on the walkway surface.
>
> B. By allowing a dangerous condition to exist for passengers, including Plaintiff while disembarking the ship during wet and rainy conditions, on a walkway specifically used by Defendant for exiting the ship.
>
> C. By failing to or negligently monitoring, controlling or otherwise providing support, assistance or supervision to passengers exiting the ship in a safe manner.
>
> D. By failing to warn passengers, including Plaintiff, when disembarking the ship, of the existence of wet, slippery walking surfaces – the gangway – and by failing to provide adequate warnings of this known and foreseeable dangerous condition[].
>
> E. Failing to inspect the subject area in a sufficient enough manner to determine the presence of hazardous conditions; to wit, a missing slip resistant surface on known wet and slippery surfaces;
>
> F. Failing to maintain its vessel and walkways exiting the ship in a reasonably safe manner;
>
> G. Negligently establishing and enforcing a method of operation with respect to inspecting walkways used by passengers entering and exiting the subject ship;
>
> H. Failing to provide a reasonably safe means to disembark the Plaintiff and other passengers at a port of call during her cruise, particularly in ports known to be rainy and wet, such as the port in Skagway, Alaska;
>
> I. Failing to properly equip the vessel, the vessel's exit walkways, and the vessel's gangways with sufficient and appropriate ramps, handrails, and other means of facilitating safe boarding and disembarkation by passengers, including the Plaintiff;
>
> J. Failing to provide adequate assistance to passengers, including the Plaintiff, while exi[]ting its ship, particularly when it is raining or had rained, and the gangways used to exit the ship were known, or should have been known to be wet;

  K. Failing to adopt policies and procedures for the safe disembarkation from the ship by its passengers, during wet and rainy conditions known and/or reasonably foreseeable to the Defendant;

  L. Failing to adhere to and/or follow existing policies and procedures for the safe boarding and disembarking of the ship;

  M. Failing to comply with Defendant's own internal policies and procedures established by its SMS, SQM and other internal operational procedures required by the ISM Code, IMO, SOLAS and all applicable health, building and safety codes and national standards in accordance with 33 CFR 96.100 et[] seq., 46 USC Section 3201 et[] seq. and all Rules and Regulations, including, but not limited to all relevant IMO standards and NVIC'S of the United States Coast Guard;

  N. In other ways as may be revealed through discovery.

*Id.* ¶ 12.

With regard to the instant Motion, Defendant filed its corresponding Statement of Material Facts, ECF No. [79] ("Defendant's SMF"). Plaintiff filed her Response, ECF No. [96], and her Response to Defendant's SMF and additional material facts, ECF No. [97] ("Plaintiff's SMF"). Defendant filed its Reply, ECF No. [116], together with a Reply to Plaintiff's SMF, ECF No. [117] ("Defendant's SMF Reply").

## II. MATERIAL FACTS

Based on the parties' respective statements of material facts in support of and in opposition to the Motion, along with the evidence in the record, the following facts are not genuinely in dispute, unless otherwise noted.

### A. The day of Plaintiff's fall

Plaintiff and nine family members were traveling on a cruise that departed Seattle on July 14, 2018. ECF No. [80-4] at 87-88. Before departing on the cruise, Plaintiff's understanding was that it would be raining in Alaska and that she should dress for rain. *Id.* at 93. Plaintiff fell on July

17, 2018 between 7:30 and 7:40 in the morning. *Id.* at 89, 91. Plaintiff and her family had booked an excursion in Skagway for that morning – a "hike and float," which entailed a moderate hike and then a scenic boat ride. *Id*. at 92. On the morning that she fell, Plaintiff wore sneakers and clothes that could get dirty, and a raincoat, but she does not remember what the weather was like. *Id*. at 94. Plaintiff testified that she did not know if it had rained that morning. *Id*. at 95.

### B. The gangway

As Plaintiff remembers, the gangway was about 20 feet long and wide enough for two people to walk up and down. *Id*. at 97-98. She testified that the gangway from the ship was straight but angled. *Id*. at 96. She remembers the gangway had handrails at least on the left side. *Id*. at 98. The material on the walking surface changed in the last three to four feet of the gangway – with the last three or four feet being metal with no type of anti-slip material on the surface. *Id*. at 99. Plaintiff was the last one of the family group exiting the ship and with her son, who she allowed to go ahead of her. *Id*. at 100. Nobody else had trouble walking down the gangway and no one else fell. *Id*. at 100. Her son was about five feet ahead of her and saw her fall. *Id*. at 100-01. At the time of her fall, Plaintiff was carrying a brochure in her right hand that the cruise line had handed her and was talking to her son. *Id.* at 102.

### C. Plaintiff's fall

As Plaintiff was walking down the gangway, she was looking ahead at her son. *Id*. at 103. She was walking at a normal pace consistently down the gangway. *Id*. at 109. She slipped on the first step she took on the metal at the end of the gangway. *Id*. at 113. She stepped forward with her left foot, slipped, and realized that she was going airborne. *Id*. at 108-09. She was not using the handrail as she was walking down the gangway, and she fell so quickly that she did not grab the handrail. *Id*. at 108. When she fell, her body hit against the metal portion of the gangway – her

lower back, ribcage, elbows, and then her head. *Id*. at 110. She fell flat on her back facing up to the sky and hit her head in the middle between the nape and crown. *Id*. at 111-12.

Plaintiff realized after she fell that there was mist on the part of the gangway where she slipped, which she likened to sprinkles of morning dew. *Id*. at 104-05. She testified that she did not know how long the mist or sprinkles of dew had been on the gangway. *Id*. at 105. Brett Berman, NCL's senior director of passenger and crew claims, testified that it had stopped raining several hours before Bahr's incident occurred and acknowledged that Alaska can be a wet environment, even if it is not raining. ECF No. [96-1] at 15, 57. He did not disagree that environmental factors could have played some role in Bahr's accident. *Id*. at 57.

### D. Warning cones

Berman also testified at his deposition that there were warning cones at two locations – inside the ship just before the start of the gangway and at the bottom of the gangway. *Id*. at 42. The purpose of the cones, according to Berman, is part of the standard set up, and intended to increase awareness and promote safety upon exiting the ship via the gangway. *Id*. at 45. Berman testified further that the cones are placed whether it is raining or dry, as part of the standard set up of the gangway from ship to shore. *Id*. at 46-47. According to Berman, the cones say on them in two languages, "Caution, wet floor." *Id*. at 115. The cones were positioned at the top of the gangway inside the ship, and at the bottom of the gangway. *Id*. at 116. He reiterated that the purpose of the cones is not to warn that the gangway is wet, but to elicit heightened awareness and to remind people to be careful while descending the gangway. *Id*. at 117-18. The cones are placed in those locations (top and bottom of the gangway) regardless of the environmental circumstances and are intended as a general warning. *Id*.

Paul Fango, a NCL crewmember who was stationed by the gangway the day Plaintiff fell, testified that the warning cones or signs were placed because there is some change in elevation in the gangways. ECF No. [97-3] at 20. According to Fango, the warning cones are required because of the change in elevation. *Id*. at 38. Plaintiff testified that she did not remember seeing any warning signs or caution cones near the gangway as she exited. ECF No. [80-4] at 99.

Fango saw Plaintiff coming down the gangway and it looked like she did not need any assistance. ECF No. [97-3] at 42-43. He and another male NCL employee went to help Plaintiff after she fell. *Id*. at 48.

### III.  LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Further, the parties may support their positions by citations to evidence in the record, including, among other things, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue of fact is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). In addition, a fact is material if it "might affect the outcome of the suit under the governing law." *Id.*

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations, which 'are jury functions, not those of a judge.'" *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019) (quoting *Feliciano v. City of Mia. Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013)); *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006); *see also Crocker v. Beatty,* 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-movant's] version of the

facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant."). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

The moving party shoulders the initial burden of demonstrating the absence of any genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, the non-moving party "must make a sufficient showing on each essential element of the case for which he has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Yet, even where a non-movant neglects to submit any alleged material facts in dispute, a court must still be satisfied that the evidence in the record supports the uncontroverted material facts proposed by the movant before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008).

## IV. DISCUSSION

### A. Maritime law

The parties agree that this case is governed by maritime law. "Maritime law governs actions arising from alleged torts committed aboard a ship sailing in navigable waters." *Guevara v. NCL (Bah.) Ltd.*, 920 F.3d 710, 720 (11th Cir. 2019) (citing *Keefe v. Bah. Cruise Line, Inc.*, 867 F.2d 1318, 1320-21 (11th Cir. 1989)). "In analyzing a maritime tort case, [courts] rely on general principles of negligence law." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) (quoting *Daigle v. Point Landing, Inc.*, 616 F.2d 825, 827 (5th Cir. 1980)). "To prevail on a negligence claim, a plaintiff must show that '(1) the defendant had a duty to protect the plaintiff from a particular injury, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff suffered actual harm.'" *Guevara*, 920 F.3d at 720 (quoting *Chaparro*, 693 F.3d at 1336). "Each element is essential to Plaintiff's negligence claim and Plaintiff cannot rest on the allegations of her complaint in making a sufficient showing on each element for the purposes of defeating summary judgment." *Isbell v. Carnival Corp.*, 462 F. Supp. 2d 1232, 1236-37 (S.D. Fla. 2006).

"A cruise-ship operator 'is not liable to passengers as an insurer, but only for its negligence.' The mere fact of an accident causing injury is insufficient to establish that a dangerous condition existed." *D'Antonio v. Royal Caribbean Cruise Line, Ltd.*, 785 F. App'x 794, 796-97 (11th Cir. 2019) (quoting *Keefe*, 867 F.2d at 1322); *see also Looney v. Metro. R.R. Co.*, 200 U.S. 480, 486 (1906) ("A defect cannot be inferred from the mere fact of an injury. There must be some proof of the negligence."); *Miller v. NCL (Bah.) Ltd.*, No. 15-cv-22254, 2016 WL 4809347, at *4 (S.D. Fla. Apr. 6, 2016) ("Generally, ship owners and operators do not owe a heightened or special duty of care to their passengers." (citing *Kermarec v. Compagnie Generale Transatlantique*, 358

8

U.S. 625, 630 (1959))), *aff'd*, 679 F. App'x 981 (11th Cir. 2017). Rather, "[u]nder maritime law, the owner of a ship in navigable waters owes passengers a duty of reasonable care under the circumstances." *Sorrels v. NCL (Bah.) Ltd.*, 796 F.3d 1275, 1279 (11th Cir. 2015).

The duty of reasonable care requires, "as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." *Keefe*, 867 F.2d at 1322. "In other words, a cruise ship operator's duty is to shield passengers from known dangers (and from dangers that should be known), whether by eliminating the risk or warning of it." *Tesoriero v. Carnival Corp.*, 965 F.3d 1170, 1178 (11th Cir. 2020). Thus, a cruise-ship operator's liability often "hinges on whether it knew or should have known about the dangerous condition." *Guevara*, 920 F.3d at 720; *see also D'Antonio*, 785 F. App'x at 797. "The mere fact that an accident occurs does not give rise to a presumption that the setting of the accident constituted a dangerous condition." *Miller*, 2016 WL 4809347, at *4. Moreover,

> [t]o establish the owner of a ship in navigable waters breached its duty of care, a plaintiff must show: "(1) a dangerous condition existed; [and] (2) the vessel's operator had actual notice of the dangerous condition; or (3) if there was no actual notice, that [d]efendant had constructive notice of the dangerous condition for an interval of time sufficient to allow the vessel's operator to implement corrective measures." *Reinhardt v. Royal Caribbean Cruises, Ltd.*, No. 1:12-cv-22105, 2013 WL 11261341, at *4 (S.D. Fla. Apr. 2, 2013) (alteration added; citations omitted).

*Stewart v. Carnival Corp.*, 365 F. Supp. 3d 1272, 1275 (S.D. Fla. 2019).

With these principles in mind, the Court considers the Motion.

### B. Notice

Defendant contends it is entitled to summary judgment because there is no evidence that it had actual or constructive notice that the gangway posed any hazard to disembarking guests. Plaintiff responds with the following arguments: notice is not a prerequisite when a cruise line is vicariously liable for the actions of its crewmember; it is unclear whether notice applies in gangway cases where there is a heightened duty of care; even assuming that notice is required,

9

Defendant was on notice of the dangers of passengers slipping and falling on its gangways in this case. Because Plaintiff asserts that notice is not required in this case, the Court must resolve this issue first before turning to the merits of Defendant's argument regarding notice.

### i. Notice is required

Plaintiff first contends that the requirement to establish notice does not apply in a maritime tort claim based on vicarious liability, relying on *Yusko v. NCL (Bahamas), Ltd.*, 4 F.4th 1164 (11th Cir. 2021). In *Yusko*, the plaintiff was injured during a dance competition when her partner, a professional dancer and cruise ship employee, released her hands during a dance move causing her to fall back and hit her head. 4 F.4th at 1166. The district court granted summary judgment in favor of the cruise line because the cruise line did not have actual or constructive notice of a risk-creating condition on the ship. *Id*. The Eleventh Circuit disagreed, holding that a passenger does not need to establish actual or constructive notice to hold a shipowner liable for the acts of its employees. *Id*. at 1170. That is, where a plaintiff's claim is based upon a theory of vicarious liability, notice is not required. Based upon *Yusko*, Plaintiff contends that she need not establish notice here because she alleges in the Complaint that NCL was negligent by failing to adequately assist passengers and is therefore vicariously liable for its crewmember Fango's negligent failure to assist Plaintiff. The Court declines to read Plaintiff's Complaint in this manner.

The Complaint asserts one claim for negligence based upon no less than thirteen (13) different breaches of duty committed by NCL, not one of its employees. *See* ECF No. [1] ¶ 12. Indeed, in *Yusko*, the plaintiff's pleading asserted that NCL, through its agents and employees, was negligent, and that the professional dancer-employee failed to act reasonably under the circumstances. 4 F.4th at 1166. Here, the Complaint contains no such allegations. With respect to the failure to assist, Plaintiff has alleged that "Defendant, **NCL (BAHAMAS) LTD. d/b/a NCL**,

breached its duty owed to Plaintiff by . . . failing to or negligently monitoring, controlling or otherwise providing support, assistance or supervision to passengers exiting the ship in a safe manner . . . [and] [f]ailing to provide adequate assistance to passengers, including the Plaintiff, while exi[]ting its ship . . . ." ECF No. [1] ¶¶ 12C., 12J. (emphasis in original). Unlike in *Yusko*, the Complaint says nothing about NCL's negligence arising through its agents and employees. If Plaintiff intended to plead negligence based upon a theory of vicarious liability, it was incumbent upon Plaintiff to make that clear. As such, the Court will not read such a claim into the Complaint.

Plaintiff contends next, citing *Vierling v. Celebrity Cruises, Inc.*, 339 F.3d 1309 (11th Cir. 2003), that it is unclear whether the notice requirement applies in a gangway case, where there is a heightened standard of care. However, *Vierling* is easily distinguishable from this case. Indeed, as stated by the Eleventh Circuit "[t]he principal issue in [the *Vierling*] case, brought by the owner of a cruise ship against a port authority, is whether *Ryan's* holding (the "*Ryan* doctrine") entitles the shipowner to indemnification for damages it paid to a passenger because the port authority failed to load passengers aboard the cruse ship in a workmanlike manner." 339 F.3d at 1310. Plaintiff's claim does not involve the *Ryan* doctrine, nor a claim for indemnification. Moreover, contrary to Plaintiff's suggestion, *Vierling* did not hold that a higher standard of care applies in negligence cases involving a gangway. Rather, the Eleventh Circuit observed generally that "[t]here is little doubt that Celebrity's liability to Vierling was foreseeable. A high degree of care is demanded of common carriers toward their passengers." *Id*. at 1319 (citation omitted). The court observed further that "[i]ncluded in this high degree of care is the duty to maintain reasonable, safe means for passengers to board and disembark." *Id*. (citation omitted). However, the Eleventh Circuit did not indicate that the high degree of care it referenced was any different from the degree of care generally owed in maritime cases.

Absent a clear statement from the Eleventh Circuit that the standards generally applicable to maritime negligence claims are different in cases involving a gangway, this Court declines to hold that notice is not required in this case.

Because the Court concludes that notice is required, the Court turns to the merits of Defendant's argument.

### ii. Actual or constructive notice

Defendant argues that there is no evidence that it had actual or constructive notice in this case regarding any potential hazard posed by the gangway.

"Actual notice exists when the shipowner knows of the unsafe condition." *Lebron v. Royal Caribbean Cruises Ltd.*, 818 F. App'x 918, 920 (11th Cir. 2020) (citing *Keefe*, 867 F.2d at 1322). "A maritime plaintiff can establish constructive notice with evidence that the 'defective condition exist[ed] for a sufficient period of time to invite corrective measures.'" *Guevara*, 920 F.3d at 720 (quoting *Monteleone v. Bah. Cruise Line, Inc.*, 838 F.2d 63, 65 (2d Cir. 1988)) (citing *Keefe*, 867 F.2d at 1322; *Rodgers v. Costa Crociere, S.p.A.*, No. 08-60233, 2009 WL 10666976, at *3 (S.D. Fla. July 6, 2009)). "Alternatively, a plaintiff can establish constructive notice with evidence of substantially similar incidents in which 'conditions substantially similar to the occurrence in question must have caused the prior accident.'" *Id.* (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 661-62 (11th Cir. 1988)).

Specifically, Defendant argues that there is no evidence of prior incidents substantially similar, and there are no accident reports or safety inspection reports regarding any potential safety concerns about the gangway on which Plaintiff fell. Defendant also points out that Plaintiff testified that she did not even know how long the mist or dew had been on the gangway when she fell. In response, Plaintiff contends that Defendant had notice through its placement of the warning

cones, there is evidence that it had rained in the port of Skagway within two hours of Plaintiff's fall, and Defendant's training program, which institutes a "Safe Access to the Vessel" policy in response to slip and falls, constitutes evidence of notice.

The Court agrees with Plaintiff that the warning cones in this case are critical to the issue of notice and considers the parties' arguments on this point first.

### iii. *The warning cones create a genuine issue of material fact*

"Not all warning signs will be evidence of notice; there must also be a connection between the warning and the danger." *Guevara*, 920 F.3d at 721. Here, Plaintiff contends that Defendant's placement of two yellow warning cones that read "Caution, wet floor" near the end of the gangway constitute sufficient evidence of constructive notice. Plaintiff relies primarily upon *Guevara* and claims there is a clear connection between the warning signs and the hazard that caused Plaintiff to fall. Defendant argues that there is no connection because the signs do not warn about the specific risk-creating condition alleged. Moreover, based on Berman's testimony, the warning cones are used as a matter of course regardless of environmental conditions and used to raise situational awareness. Thus, Defendant urges the Court to apply the reasoning in *Taiariol v. MSC Crociere S.A.*, 677 F. App'x 599 (11th Cir. 2017).

In *Taiariol*, the plaintiff slipped on the nosing along the edge of a step when leaving the theater on a cruise ship. 677 F. App'x at 600. The plaintiff claimed there was a genuine issue of material fact with respect to notice of the slippery condition because there was a "watch your step" sticker on the nosing of the step. *Id*. In rejecting her contention, the Eleventh Circuit noted that "[c]ommon sense dictates that the sticker served to caution persons on the ship that the step was there; that is, it warned passengers that the surface was not flat. There is no evidence that it was intended to warn passengers that the nosing may be slippery. Even viewed in the light most

favorable to [plaintiff], we cannot see how that sticker provides any evidence that the defendant had notice that the step's nosing was dangerously slippery" *Id*. at 602. Finding that the defendant did not have notice, the Eleventh Circuit affirmed the district court's grant of summary judgment.

In contrast, the Eleventh Circuit in *Guevara* reversed the district court and found that a genuine issue of material fact was raised regarding the defendant's prior notice of a dangerous condition. In *Guevara,* the plaintiff slipped and fell while stepping down from a landing on the outer deck of a cruise ship. A permanently affixed warning sign at the top of the steps read "ATTENTION! FOR YOUR OWN SAFETY PLEASE USE THE HANDRAIL. WATCH YOUR STEP." 920 F.3d at 715. The Defendant claimed that it lacked prior notice of the alleged dangerous condition and the warning sign was installed by the either the original owner or builder of the ship and there was no evidence as to why the sign was placed at that location or what specific condition, if any, it was affixed to address. The plaintiff pointed to the warning sign alerting passengers to "watch your step" as evidence that defendant was on notice of the deceptive, and therefore dangerous, nature of the step down. The Eleventh Circuit noted:

> In analyzing whether the warning sign raises a genuine issue of material fact as to NCL's knowledge, we look to our recent decision in *Sorrels*. In *Sorrels*, a cruise ship passenger slipped and fell on the deck of a Norwegian ship, which was wet from rain. 796 F.3d at 1279. We held that the cruise ship employees' testimony— that the cruise line regularly placed warning signs advising passengers that the deck was "slippery when wet"—was enough to create a genuine issue of material fact regarding whether the cruise line had actual or constructive knowledge that the deck could be slippery after precipitation.

*Guevara,* 920 F.3d at 721 (internal citation omitted)

The Eleventh Circuit distinguished the facts in *Taiariol* by noting that the plaintiff there had attempted to utilize the "watch your step" sticker as evidence of notice for a *different* purpose: that the stair's nosing was slippery. The court agreed with the plaintiff that, unlike the sign in *Taiariol*, the "watch your step" warning sign cautioned of the hazard the plaintiff contended caused

14

his injury and meant precisely what it said – "to caution persons on the ship that the step was there." *Id*. at 721. As a result, the Eleventh Circuit held "that a cruise ship operator has notice of a condition—and thus a duty to warn—if a sign is posted on a ship warning about the condition." *Id*. at 722.

Upon review, the Court finds that the warning in this case are similar to the warning in *Guevara* and distinct from the warning in *Taiariol*. Indeed, Plaintiff has alleged in pertinent part that she "slipped and fell near the end of a wet and slippery gangway." ECF No. [1] ¶ 8. It is undisputed that the warning cones placed at the end of the gangway in this case stated in two languages, "Caution, wet floor," and that those warning cones were placed by Defendant. Thus, as in *Guevara*, there is a sufficient connection as the hazard of which the signs were explicitly warning is precisely the hazard Plaintiff alleges caused her to fall.

Nevertheless, Defendant argues that because Berman testified that the cones are used simply to raise situational awareness, rather than to warn of a wet floor, there is no connection between the signs and the warning, similar to *Taiariol*. However, Defendant's argument turns the Eleventh Circuit's reasoning in *Taiariol* and *Guevara* on its head. The warning signs in this case *expressly* state "Caution, wet floor" and thus a person reading the warning would not conclude that they were placed to signal a change in elevation based upon the warning language. In contrast, a reasonable jury could conclude that the warning sign's language applies to the hazard causing the Plaintiff's fall. Moreover, Berman's testimony that the cones are used as a matter of course regardless of environmental conditions, and Fango's testimony that the cones are intended to warn of a change in elevation, underscore that there is a genuine issue of material fact with respect to the warning cones and whether they indicate that Defendant had constructive notice in this case. *Cf. Fylling v. Royal Caribbean Cruises, Ltd.*, No. 18-CV-21953-MARTINEZ/AOR, 2019 WL

8275158, at *3 (S.D. Fla. Dec. 10, 2019) (holding that placement of warning cones stating "caution, watch your step" and testimony that cones were intended to alert passengers of change in elevation precluded summary judgment on issue of notice, where plaintiff stumbled on entranceway ramp), *report and recommendation adopted by* 2020 WL 3266198 (S.D. Fla. Mar. 12, 2020).

Accordingly, and upon this basis alone, Defendant is not entitled to summary judgment.[1]

### C. Additional arguments

Because Defendant has failed to show that no genuine issue of material fact exists with respect to the issue of notice warranting the entry of summary judgment, the Court does not consider Defendant's argument that there is no admissible record evidence to establish medical causation of Plaintiff's claimed injuries at this stage.

### V. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that the Motion, **ECF No. [78]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on September 2, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

---

[1] The Court acknowledges that *Guevara*'s discussion of warning signs in the context of notice related specifically to that plaintiff's failure to warn claim. *See* 920 F.3d at 721. In this case, Defendant has not attempted to distinguish its argument based upon the numerous theories of negligence alleged by Plaintiff, arguing generally that Defendant lacked notice. Therefore, the Court has limited its analysis to Defendant's general contention.