**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 19-cv-22973-BLOOM/Louis**

MAI LIS BAHR,

      Plaintiff,

v.

NCL (BAHAMAS) LTD.,
*doing business as* NCL,

      Defendant.

_____/

**OMNIBUS ORDER ON MOTIONS TO STRIKE/*DAUBERT* MOTIONS**

      **THIS CAUSE** is before the Court upon Plaintiff Mai Lis Bahr's *Daubert* Motion to Strike Defendant's Experts Sala, Rosado, and Gelblum, ECF No. [76] ("Plaintiff's Motion") and Defendant NCL (Bahamas), Ltd.'s Motion to Strike/*Daubert* Motion to Exclude Plaintiff's Expert Witnesses, ECF No. [80] ("Defendant's Motion"). With respect Plaintiff's Motion, Defendant filed a response, ECF No. [99], to which Plaintiff filed a reply, ECF No. [112]. With respect to Defendant's Motion, Plaintiff filed a response, ECF No. [95], to which Defendant filed a reply, ECF No. [113]. Plaintiff also filed a notice of supplemental authority in response to Defendant's Motion, ECF No. [119]. The Motions are therefore ripe for the Court's consideration. For the reasons that follow, Plaintiff's Motion is granted in part and denied in part consistent with this Order, and Defendant's Motion is granted in part and denied in part consistent with this Order.

**I.      BACKGROUND**

      On July 17, 2019, Plaintiff Mai Lis Bahr ("Plaintiff") initiated the instant action against Defendant for sustained while exiting the Norwegian *Pearl* onto the dock at the Port of Skagway, Alaska. *See* ECF No. [1]. Plaintiff was walking down a gangway between the *Pearl* and the dock,

when she slipped and fell near the end of the gangway, which she alleges was wet and slippery. *See id.* ¶ 8. Based on these allegations, the Complaint asserts a single count of maritime negligence against Defendant, alleging that Defendant breached its duty of care by "failing to maintain slip resistance materials; failing to provide adequate railings; failing to provide a safe walkway; [] failing to warn Plaintiff of the lack of an adequate railing; by providing a worn slip resistance surface material, and by failing to warn of the inadequate, and worn, slip resistant surface materials." *Id.* ¶ 9.

In Plaintiff's Motion, Plaintiff requests that the Court exclude Defendant's experts Joseph Sala, Marian Rosado, and Jeffrey Gelblum. ECF No. [76]. In Defendant's Motion, Defendant requests that the Court exclude Plaintiff's experts Julianne Frain, Nicolas Suite, Andrew Walker, Craig Lichtblau, Lawrence Salmansohn, Joellen Gill, and Oscar Padron. ECF No. [80]. The Court considers each Motion in turn.

## II.      LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. When a party proffers the testimony of an expert under Rule 702, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). To determine whether expert testimony or any report prepared by an expert may be admitted, the Court engages in a three-part inquiry, which includes whether: (1) the expert is qualified to testify competently regarding the matters the expert intends to address; (2) the methodology by which the expert reaches his or her conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence

2

or to determine a fact in issue. *See City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993)). The Court of Appeals for the Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). While some overlap exists among these requirements, the court must individually analyze each concept. *See id.*

As for the qualification prong, an expert may be qualified in the Eleventh Circuit "by knowledge, skill, experience, training, or education." *J.G. v. Carnival Corp.*, No. 12-21089-CIV, 2013 WL 752697, at *3 (S.D. Fla. Feb. 27, 2013) (citing *Furmanite Am., Inc. v. T.D. Williamson*, 506 F. Supp. 2d 1126, 1129 (M.D. Fla. 2007); Fed. R. Evid. 702). "An expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *Id.* (citing *Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)). "[S]o long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *See Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 661 (S.D. Fla. 2012) (citing *Kilpatrick v. Breg, Inc.*, No. 08-10052-CIV, 2009 WL 2058384, at *1 (S.D. Fla. June 25, 2009)). "After the district court undertakes a review of all of the relevant issues and of an expert's qualifications, the determination regarding qualification to testify rests within the district court's discretion." *J.G.*, 2013 WL 752697, at *3 (citing *Berdeaux v. Gamble Alden Life Ins. Co.*, 528 F.2d 987, 990 (5th Cir. 1976)).[1]

Next, when determining whether an expert's testimony is reliable, "the trial judge must assess whether the reasoning or methodology underlying the testimony is scientifically valid

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the Court of Appeals for the Fifth Circuit rendered prior to October 1, 1981.

and . . . whether that reasoning or methodology properly can be applied to the facts in issue."
*Frazier*, 387 F.3d at 1261-62 (citation omitted) (quotation marks omitted). To make this
determination, the district court examines: "(1) whether the expert's theory can be and has been
tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or
potential rate of error of the particular scientific technique; and (4) whether the technique is
generally accepted in the scientific community." *Id.* (citing *Quiet Tech. DC-8, Inc. v. Hurel-
Dubois, UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003)). "The same criteria that are used to assess
the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific,
experience-based testimony." *Id.* at 1262 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137,
152 (1999)). Thus, these factors are non-exhaustive, and the Eleventh Circuit has emphasized that
alternative questions may be more probative in the context of determining reliability. *See id.*
Consequently, trial judges are afforded "considerable leeway" in ascertaining whether a particular
expert's testimony is reliable. *Id.* at 1258 (citing *Kumho Tire Co.*, 526 U.S. at 152).

The final element, helpfulness, turns on whether the proffered testimony "concern[s]
matters that are beyond the understanding of the average lay person." *Edwards v. Shanley*, 580 F.
App'x 816, 823 (11th Cir. 2014) (quoting *Frazier*, 387 F.3d at 1262). "[A] trial court may exclude
expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately
explained." *Id.* (quoting *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F.3d
1092, 1111 (11th Cir. 2005)). To be appropriate, a "fit" must exist between the offered opinion
and the facts of the case. *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004) (citing
*Daubert*, 509 U.S. at 591). "For example, there is no fit where a large analytical leap must be made
between the facts and the opinion." *Id.* (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997)).

Under *Daubert*, a district court must take on the role of gatekeeper, but this role "is not intended to supplant the adversary system or the role of the jury." *Quiet Tech.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). Consistent with this function, the district court must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). "[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech.*, 326 F.3d at 1341 (citations omitted) (quotation marks omitted). Thus, the district court cannot exclude an expert based on a belief that the expert lacks personal credibility. *Rink*, 400 F.3d at 1293 n.7. To the contrary, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech.*, 326 F.3d at 1341 (quoting *Daubert*, 509 U.S. at 596). "Thus, '[o]n cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility.'" *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (quoting *Jones v. Otis Elevator Co.*, 861 F.2d 655, 662 (11th Cir. 1988)). Ultimately, as noted, "a district court enjoys 'considerable leeway' in making" evidentiary determinations such as these. *Cook ex rel. Est. of Tessier*, 402 F.3d at 1103 (quoting *Frazier*, 387 F.3d at 1258).

## III.   DISCUSSION

### A.  Plaintiff's Motion

#### a.  Dr. Sala

Plaintiff seeks to exclude Dr. Joseph Sala ("Dr. Sala") who was retained by Defendant as an expert in human factors. ECF No. [76] at 6. Plaintiff raises two arguments. Plaintiff first challenges Dr. Sala's opinion on the helpfulness prong of *Daubert*. *Id.* at 6-8. Plaintiff argues that

Dr. Sala's opinions and conclusions will not assist the jury in determining what caused Plaintiff's fall since the jury is well-equipped with life experience to make this determination from the very same facts Dr. Sala relies on. *Id.* Plaintiff relies on several cases, but only one case from within the Eleventh Circuit, *Collins v. Marriott Int'l, Inc.*, No. 09-22423-CIV, 2012 WL 12948670, at *2 (S.D. Fla. July 2, 2012). *Id.* at 7. In *Collins*, the court determined that the expert's opinion on the condition of the terrain in question was unnecessary given photographic evidence that made plain the condition of the terrain. *See Collins*, 2012 WL 12948670, at *2. Alternatively, Plaintiff seeks to limit a subset of Dr. Sala's opinions based on the qualification prong of *Daubert*, claiming that his area of expertise in human factors precludes him from testifying about medical conditions. ECF No. [76] at 8-9. Plaintiff notes that in *Scaccetti v. NCL (Bahamas) Ltd.*, No. 17-23888-CIV, 2018 WL 6200011, at *3 (S.D. Fla. Nov. 27, 2018), the court rejected Dr. Sala's opinion pertaining to medical conditions because he was not a medical doctor. ECF No. [76] at 8.

This Court first finds that Dr. Sala's opinion can assist the jury. Defendant states that Dr. Sala's opinion reveals how "perception of a surface's slipperiness before pedestrians walk on the surface can affect gait parameters." ECF No. [76-4] at 4. Dr. Sala's opinion also shows that "when attention is directed more frequently elsewhere, such as at an obstacle positioned at head level, pedestrians perform worse at avoiding obstacles at ground level" and that "[t]he demands of simply engaging in conversation have been shown to alter and detrimentally affect the way in which participants searched, scanned, and encoded information in a visual scene." *Id.* at 5. Furthermore, Dr. Sala discusses "the numerous features and/or controls in place that mitigate potential walking hazards" that Plaintiff's human factors expert, Ms. Joellen Gill, failed to consider. *Id.* at 11. In short, Dr. Sala's opinion can be distinguished from the expert's opinion in *Collins*, 2012 WL 12948670, at *2, since Dr. Sala's testimony does not merely describe what is already evident from

photographs but opines on how human factors interact with the environment around them. Given Dr. Sala's human factors analysis, the Court finds that Dr. Sala's opinion could inform lay persons without expertise in the specialized field of human factors. *See United States v. Burchfield*, 719 F.2d 356, 357 (11th Cir. 1983) (requiring expert opinions to inform lay persons without expertise in specialized fields). As such, this Court finds that Dr. Sala's opinion is helpful in assisting the jury in determining what may have caused Plaintiff's fall.

The Court must next address Dr. Sala's qualifications. The Court finds that because Dr. Sala is not a medical doctor and because there is not sufficient evidence in the record about Dr. Sala's knowledge, skill, experience, training, or education on matters pertaining to medical conditions, *see* ECF No. [99-1], Dr. Sala will not be permitted to give testimony on medical matters. *See Scaccetti*, 2018 WL 6200011, at \*4 (limiting Dr. Sala's testimony to non-medical testimony but permitting other human factor testimony).

The Court finds that Dr. Sala has the qualifications to give his opinion on non-medical matters. Although Dr. Sala is not an engineer as Plaintiff points out, ECF No. [112] at 3, that fact is inapposite given his expertise in human factors. "An expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *J.G.*, 2013 WL 752697, at \*3 (citing *Maiz*, 253 F.3d at 665). "[S]o long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *See Clena Invs., Inc.*, 280 F.R.D. at 661 (citing *Kilpatrick*, 2009 WL 2058384, at \*1). The Court finds, *J.G.*, 2013 WL 752697, at \*3, to be instructive. In *J.G.*, the court found that a law enforcement officer was at least minimally qualified to testify about cruise-ship security even though he did not have a background in cruise-ship security. 2013 WL 752697, at \*3. Similarly, in this case, Dr. Sala is at least minimally qualified given his expertise in human factors to give testimony on human factors

even though he is not an engineer. Furthermore, Plaintiff's reliance on *Padula v. Carnival Corp.*, No. 16-CV-23862, 2017 WL 7792714 (S.D. Fla. Oct. 13, 2017) is misplaced. The court in *Padula* precluded a civil engineer who did not have a background in psychology or human factors from testifying about human factors. *See id.* at *3, *5. Dr. Sala is an expert in human factors and has a background in psychological and brain sciences. ECF No. [99-1]. As such, Dr. Sala is qualified to give his opinion on human factors.

In sum, Dr. Sala will be limited to his non-medical expert opinion on human factors.

### b.  Dr. Rosado

Plaintiff seeks to exclude Dr. Marian Rosado ("Dr. Rosado") who was retained by Defendant as an expert neuropsychologist to testify about Plaintiff's past, present, and future medical condition as it relates to the alleged injuries. ECF No. [76] at 9. Plaintiff raises three related arguments. First, Plaintiff argues that Dr. Rosado's report contains Dr. Rosado's inadmissible personal opinions, such as inferences about Plaintiff's credibility that are drawn from her observations of Plaintiff's behavior, and that her use of quotation marks is intended to question Plaintiff's credibility. *Id.* at 9-10. Relatedly, Plaintiff argues that Dr. Rosado's opinion invades the jury's province to make credibility determinations. *Id.* at 12; *see also United States v. Beasley*, 72 F.3d 1518, 1528 (11th Cir. 1996). Second, Plaintiff argues that Dr. Rosado's testimony is based on an unreliable methodology. *Id.* at 10. Dr. Rosado incorporates Dr. Doyle Patton's ("Dr. Patton") evaluation, relies on the "Slick Standard" without further explanation, and her report otherwise does not have sufficient facts or data to support her analysis. *See id.* at 10-11. Third, Plaintiff argues that Dr. Rosado does not have medical qualifications to give medical opinions. *Id.* at 13.

This Court first finds that Dr. Rosado's personal inferences about Plaintiff's credibility are inadmissible, even if they are drawn from Dr. Rosado's psychological evaluation. In *Kleiman v.*

*Wright*, No. 18-CV-80176, 2020 WL 6729362, at *10 (S.D. Fla. Nov. 16, 2020), this Court found that while a forensic psychologist could give an expert opinion about a patient's condition, the psychologist's descriptions and characterizations of the patient's demeanor, such as whether the psychologist believed the patient was a sincere, truthful, respectful, willing participant, fell within the jury's province as a credibility determination. *See also Beasley*, 72 F.3d at 1528. Similarly, in this case, Dr. Rosado's personal inferences about Plaintiff's credibility that were drawn from Plaintiff's demeanor, mannerisms, gait, motor ability, attitude, effort, compliance, approach, and response style to the psychological evaluation are inadmissible.

The results from the psychological examination, including Plaintiff's poor performance and inconsistency, however, are admissible because they are not credibility determinations but test results that show material discrepancies. *See Kleiman*, 2020 WL 6729362, at *10. In *Kleiman*, the Court limited the admissibility of a psychologist's expert opinion to the psychological diagnosis of the patient but not the psychologist's opinion on the patient's credibility. *See id.* Similar to the Court's decision in *Kleiman*, the only testimony to be excluded is what Dr. Rosado believes her test results imply in terms of Plaintiff's credibility, not the test results themselves. Dr. Rosado will be permitted to testify that Plaintiff's test results are not a true representation of Plaintiff's cognitive ability given the inconsistencies, but Dr. Rosado may not testify about whether she believes Plaintiff is intentionally fabricating the test results. Also, whether the intent behind her use of quotation marks in her report is to quote Plaintiff or to question Plaintiff's veracity is immaterial as the jury will only hear opinion, not read her report.

Second, the Court finds that Dr. Rosado's testimony, other than the subset of testimony regarding Dr. Rosado's personal inferences about Plaintiff's credibility, is based on a reliable methodology. The Court specifically allowed Dr. Rosado to substitute in and review Dr. Patton's

data after he passed away. ECF No. [54]. Dr. Rosado, therefore, properly relied on Dr. Patton's evaluation. Even if the Court had not granted permission for Dr. Rosado to substitute in and review Dr. Patton's data, experts have wide latitude to go beyond their first-hand knowledge and rely on information provided to them by others. *See Daubert*, 509 U.S. at 592. As such, Dr. Rosado's reliance on Dr. Patton's data is not grounds to exclude Dr. Rosado's testimony. Furthermore, Dr. Rosado makes clear that the use of the "Slick Standard" is "typically used in neuropsychological and forensic settings to assess external motion, effort, symptom validity, performance validity, convergence of test data, among other variables." ECF No. [99-3] at 1. It also appears that Dr. Rosado used MCMI-IV and MMPI-2-RF tests, which are industry-accepted tests. ECF No. [99] at 14-15. Because Dr. Rosado used reliable methods, Plaintiff's argument on this matter is unpersuasive.

Finally, this Court finds that Dr. Rosado's opinion, as it pertains to Plaintiff's psychological evaluation, does not extend beyond her expertise as a clinical neuropsychologist. Dr. Rosado is a licensed psychologist and a clinical neuropsychologist. ECF No. [99-3] at 1. Forming a neurological profile using a methodology that relies on psychological conditions and various medications does not make Dr. Rosado's opinion a medical opinion that is beyond the purview of her qualifications. *See J.G.*, 2013 WL 752697, at *3 (citing *Maiz*, 253 F.3d at 665) ("An expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand."). In short, this Court finds that, as a clinical neuropsychologist, Dr. Rosado can base her opinion on psychological conditions that are relied upon in neuropsychology to form Plaintiff's neurological profile.

In sum, Dr. Rosado's opinion will be limited to her psychological evaluation of Plaintiff, but any inferences about Plaintiff's credibility is inadmissible.

### c.   Dr. Gelblum

Plaintiff seeks to exclude Dr. Jeffrey B. Gelblum ("Dr. Gelblum") who was retained by Defendant to testify about Plaintiff's medical condition, prognosis, alleged impairments, and causes thereof. ECF No. [76] at 14. Plaintiff argues that Dr. Gelblum may be testifying about Plaintiff's ability to work and that such testimony should be inadmissible. *Id.* at 14-15. Defendant states that Dr. Gelblum will not be testifying about anything beyond his report, which does not cover Plaintiff's ability to work. ECF No. [99] at 16-17.

As such, Dr. Gelblum's opinion will be limited to his report and shall not include Plaintiff's ability to work in the future.

### B.   Defendant's Motion

### a.   Dr. Frain

Defendant seeks to exclude Dr. Julianne Frain ("Dr. Frain") who was retained by Plaintiff to do a "vocational rehabilitation assessment" of Plaintiff's functioning and ability to obtain work. ECF No. [80] at 4-5. Defendant raises six related arguments. First, Defendant argues that Frain lacks qualifications in the medical field to give her opinion on Plaintiff's functioning and ability to work. *Id.* Second, Dr. Frain's opinion on medical-related matters is not her own but her co-signatory's work. *Id.* at 5. Third, Dr. Frain's opinions are based on fictitious facts because she relies on an incomplete set of relevant facts. *Id.* at 5-6. Fourth, Dr. Frain uses unreliable or unknown methods. *Id.* at 7. Fifth, because of the above deficiencies, Dr. Frain's opinion is unhelpful and more prejudicial than probative. *Id.* at 8. Sixth, Dr. Frain should not be permitted to give undisclosed opinions. *Id.* at 9.

This Court finds that Dr. Frain has the necessary qualifications to give her opinion on Plaintiff's ability to work. Dr. Frain has an M.S. and Ph.D. in rehabilitation counseling. ECF

No. [80-3]. Dr. Frain is also a licensed and certified rehabilitation counselor, certified expert of the American Board of Vocational Experts, and a certified provider for the State of Florida Department of Education Division of Vocational Rehabilitation. *See id.* As such, this Court finds that she is qualified to give her opinion on Plaintiff's functioning and ability to work. The Court again finds *J.G.*, 2013 WL 752697, at *3 to be instructive. In *J.G.*, the court concluded that "[a]n expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." Dr. Frain is at least minimally qualified, even though she does not have any medical expertise, to give testimony on Plaintiff's functioning and ability to work, given her expertise in vocational rehabilitation.

Next, the Court finds that Dr. Frain may rely on her co-author's medical opinion in forming her own opinion about Plaintiff's functioning and ability to work. As stated above, experts have wide latitude to go beyond their first-hand knowledge and rely on information provided to them by others. *See Daubert*, 509 U.S. at 592. As such, Dr. Frain may rely on information provided to her by her co-author. However, while Dr. Frain may rely on her co-author's medical opinion to form her own opinion on Plaintiff's vocational rehabilitation, she may not be a conduit for her co-author's medical opinion. *See Jones v. Royal Caribbean, Ltd.*, No. 12-CV–20322, 2013 WL 8695361, at *6 (S.D. Fla. Apr. 4, 2013*); In re 3M Combat Arms Earplug Prod. Liab. Litig.*, No. 3:19-md-2885, 2021 WL 765019, at *45 (N.D. Fla. Feb. 28, 2021) (finding that an expert's opinion was admissible because it did not "simply parrot" another other expert's testimony). In *Jones*, the court precluded a witness from offering an expert medical opinion that was not his own. *See* 2013 WL 8695361, at *6. Similarly, Dr. Frain's findings about Plaintiff's vocational rehabilitation must be her own, and she may not simply parrot her co-author's opinion on Plaintiff's medical condition.

Next, the Court is not persuaded by Defendant's argument that Dr. Frain's opinion should be excluded because it is based on fictitious facts. The Eleventh Circuit has determined that an objection based upon an expert opinion's reliance on incorrect assumptions attacks the weight and persuasiveness of the testimony, not its admissibility. *See Rosenfeld v. Oceania Cruises, Inc.*, 654 F.3d 1190, 1194 (11th Cir. 2011). In *Rosenfeld*, the Eleventh Circuit found that an expert opinion based on incorrect assumptions was admissible and that the opinion could be challenged on cross-examination. *See id.* Defendant cites several cases, none of which come from the Eleventh Circuit, that suggest that expert opinions without any factual basis is inadmissible. ECF No. [80] at 5-6; *see Guillory v. Domtar Indus.*, Inc., 95 F.3d 1320, 1330 (5th Cir. 1996); *D & D Assoc., Inc. v. Bd. Of Educ. Of N. Plainfield*, 411 F.Supp. 2d 483, 488 (D.N.J. 2006); *Guidroz-Brault v. Mo. Pac. R. Co.*, 254 F.3d 825, 830-31 (9th Cir. 2001); *Greenwell v. Boatright*, 184 F.3d 492, 497 (6th Cir. 1999). However, the instant case is distinguishable from Defendant's cited cases because there is some factual basis for Dr. Frain's opinion, albeit not the complete set of facts. ECF No. [80-1] at 7-8. For instance, Dr. Frain did consider the fact that Plaintiff reactivated her real estate license and is listed as a real estate agent. *See id.* As such, the Court is not persuaded by Defendant's argument on this matter.

Next, Defendant argues that Dr. Frain's methods are unreliable or unknown, but the Court finds that Dr. Frain described her methodology in sufficient detail in her deposition testimony.

> The methodology is that I reviewed medical records which is customary for any Vocational Rehabilitation Expert to do. I looked at what the particular conditions are and those medical records and familiarized myself with them because that's critical. I interviewed the client which is part of the vocational assessment. I relied on testing that was done, academic and intelligence testing performed by the neuropsychologist who identified what her current skill set is from a cognitive standpoint. I looked at the local labor market to assess what the accuracy, the accurate wages are for the particular occupation in which she's worked in the past and that which she is capable of working in in the future, and I continue to follow up with her even up to today.

ECF No. [80-2] at 229-30. Defendant cites to one case from the Seventh Circuit, *Ciomber v. Cooperative Plus, Inc.*, 70 F.3d 635, 642 (7th Cir. 2008), to argue that experts cannot cure deficiencies in their Rule 26(a)(2) report through deposition testimony. However, *Ciomber* is distinguishable from the present case because the expert in *Ciomber* submitted "eight terse statements" concluding that a party was liable in his expert report. 70 F.3d at 638. Dr. Frain's 16-page report is fundamentally different from the expert's report in *Ciomber* that was clearly deficient. Rather, this Court finds that Dr. Frain's report contains a sufficient disclosure of Dr. Frain's opinions and the basis and reasons for them as required by Fed. R. Civ. Proc. 26(a)(2). *See* ECF No. [80-1]. For instance, Dr. Frain discloses how she relied upon various vocational functioning tests. *See id.* at 11-12. Furthermore, this Court has previously determined that Rule 26(a)(2) reports do not need to contain a complete discussion of the expert's methodology because the reports cannot realistically explore all the nuances of an expert's methodology. *Kleiman*, 2020 WL 6729362, at *7 (quoting *Etherton v. Owners Ins. Co.,* No. 10-CV-00892, 2011 WL 684592, at *2 (D. Colo. Feb. 18, 2011)). As such, the Court finds that Dr. Frain's methodology is reliable.

Given the Court's finding that Dr. Frain's opinion relies on sufficient facts and reliable methods, it follows that Defendant's argument that Dr. Frain's opinion is unhelpful and more prejudicial than probative is unpersuasive. Defendant is persuasive, however, in arguing that Dr. Frain should not be permitted to give undisclosed *ad hoc* opinions that she offered during her deposition. The rules preclude parties from using undisclosed information to supply evidence on a motion, at a hearing, or at a trial, unless the failure to disclose was substantially justified or harmless. Fed. R. Civ. Proc. 37(c)(1). Plaintiff does not address how the failure to disclose Dr. Frain's *ad hoc* opinion was substantially justified or harmless. ECF No. [95] at 4-6.

In sum, Dr. Frain's opinion will be limited to her own expert opinion on vocational rehabilitation, not her co-author's medical opinion, and she will not be permitted to offer undisclosed opinions.

### b.  Dr. Walker

Defendant seeks to exclude Dr. Andrew Walker ("Dr. Walker") who is Plaintiff's treating physician and a radiologist offering his impressions of a magnetic resonance image ("MRI") of Plaintiff's spine and an MRI of Plaintiff's brain. ECF No. [80] at 8. Dr. Walker's expert witness disclosures include his opinion about a potential posttraumatic syrinx, a mild traumatic brain injury ("TBI"), and the fact that 70% of mild TBI patients do not demonstrate abnormal decreased white matter FA on a diffusion tensor imaging. ECF No. [80-8] at 3. Defendant raises three arguments. First, Defendant argues that Dr. Walker did not file a proper Rule 26(a)(2)(B) report that is necessary to give such an expert opinion. *See* ECF No. [80] at 9; *In re Denture Cream Prods. Liab. Litig.*, No. 09–2051–MD, 2012 WL 5199597, at *4 (S.D. Fla. Oct. 22, 2012). Second, Defendant argues that Dr. Walker's opinion about the causes of Plaintiff's cervical syrinx is unreliable because his factual bases and methods were not disclosed. ECF No. [80] at 9-10. Third, Defendant argues that Dr. Walker's use of the word "may" suggests that he is not confident in his opinion and that he therefore fails to meet basic admissibility requirements. *Id.* at 10-11.

As a preliminary matter, this Court finds that, in accordance with Magistrate Judge Louis's finding, Dr. Walker's testimony is only admissible as an expert opinion. ECF No. [72] at 9-10. Considering the contents of his opinion stated above, which include statistics about TBI patients in general that is beyond the purview of a treating physician, this Court finds that Dr. Walker is proffering an expert opinion. The next issue is whether a Rule 26(a)(2)(B) report for expert testimony is necessary. This Court previously found in *Torres v. First Transit Inc.*, No. 17-CV-

81162, 2018 WL 3729553, at *2 (S.D. Fla. Aug. 6, 2018), that when a treating physician testifies regarding the opinions he formed during the course of treatment, the treating physician does not need to produce a Rule 26(a)(2)(B) report. *Id.* However, a treating physician offering opinions beyond those arising from treatment is considered to be an expert from whom a full Rule 26(a)(2)(B) report is required, unless the failure to disclose is substantially justified or harmless. *Id.* The Court in *Torres* considered four factors when considering whether the failure to disclose was substantially justified or harmless: "(1) the importance of the excluded testimony; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *See id.* (quoting *Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, No. 09-CV-60351, 2010 WL 1837724, at *4 (S.D. Fla. May 3, 2010)).

In this case, because Dr. Walker is giving his testimony as an expert, a Rule 26(a)(2)(B) report is necessary unless the failure to disclose was substantially justified or harmless. A plain reading of Dr. Walker's 2-page disclosure reveals that the disclosure does not meet the criteria for a Rule 26(a)(2)(B) report. ECF No. [80-7]. Because Dr. Walker did not satisfy the requirements of a Rule 26(a)(2)(B) report, an analysis under the *Torres* four-factor test is necessary. The Court first finds that Dr. Walker's MRI analysis is material to Plaintiff's case in establishing Plaintiff's injuries. Plaintiff also explained the failure to comply. ECF No. [72] at 9. Defendant had an opportunity to depose Dr. Walker on June 16, 2021, in accordance with Magistrate Judge Louis' order, ECF No. [95] at 6-7, to cure any potential prejudice. Defendant's rebuttal expert disclosures reveal that the additional records from Dr. Walker did not alter the analysis of Defendant's experts, indicating no potential prejudice. ECF No. [95-1] at 89-90. Therefore, this Court finds that the

failure to disclose did not result in prejudice, the omission is harmless, and a Rule 26(a)(2)(B) report is not necessary.

However, Defendant's second argument that Dr. Walker's expert opinion is unreliable because Dr. Walker's did not disclose his methodology is persuasive. The method Dr. Walker used to arrive at his opinion about the causes of Plaintiff's condition is unknown. ECF No. [80-9] at 78. Dr. Walker did not examine the spine and brain before the underlying incident, so it is unclear how Dr. Walker can opine that the cause of Plaintiff's condition was not a pre-existing or congenital syrinx but a posttraumatic syrinx. *See id.* In *Muzaffar v. Ross Dress for Less*, No. 12–61996–CV, 2013 WL 3850848, at *1 (S.D. Fla. July 26, 2013), the court held that an opinion on the scope of observation, diagnosis, and treatment do not require an explanation of the methods used, but an opinion on causation, prognosis, and future implications of the injury requires a full disclosure of methodologies used. Similarly, in this case, the Court finds that Dr. Walker's treatment of Plaintiff's conditions that pertains solely to observation, diagnosis, and treatment do not require an explanation of the methods used, but an opinion pertaining to the causation, prognosis, and future implications of the injury does need an explanation of the methods used.

Defendant filed a notice of supplemental authority, ECF No. [119], regarding *Torres v. Wal-Mart Stores East, L.P.*, No. 19-62352-CV, 2021 WL 3634632 (S.D. Fla. Aug. 17, 2021). In *Torres*, the court determined that a treating physician should be permitted to give his opinion about the causes of a medical condition because a treating physician could form opinions about causation in the "course of care and treatment" of the plaintiff. 2021 WL 3634632, at *17. However, this case is distinguishable from *Torres* in that the treating physician in *Torres* met with the plaintiff for his medical examination, treated his medical condition, and could reasonably form opinions about the causes of plaintiff's injuries through his care and treatment. *Id.* at *4. In contrast, Dr.

Walker's opinion was formed from a review of Plaintiff's MRIs without any further examination of Plaintiff. ECF No. [80-9] at 52-53. Dr. Walker does not recall ever meeting Plaintiff for diagnosis or treatment. *Id.* Therefore, without further discussion of the methodologies used, the Court finds that Dr. Walker cannot opine on the causes of Plaintiff's injuries allegedly determined during the course of Dr. Walker's care and treatment when none took place other than his review of Plaintiff's MRIs. *See Muzaffar*, 2013 WL 3850848, at *1. Furthermore, Defendant's final argument about Dr. Walker's use of the word "may" to describe his opinion about causes of Plaintiff's condition is moot.

In sum, Dr. Walker's opinion will be limited to his observation, diagnosis, and treatment of Plaintiff from her MRIs, which does not require a disclosure of the methods used, and he will not be permitted to give testimony about the causes of Plaintiff's condition or general statistics about mild TBI patients.

### c. Dr. Lichtblau

Defendant seeks to exclude Dr. Craig Lichtblau ("Dr. Lichtblau") who Plaintiff retained as a psychiatrist and brain injury expert. ECF No. [80] at 11. Defendant raises five related arguments. First, Defendant argues that Dr. Lichtblau cannot offer an opinion about whether Plaintiff needs a lumbar fusion surgery because Plaintiff's counsel stated that Dr. Lichtblau would not be offering his opinion on this topic. *Id.* at 11. Second, Defendant argues that Dr. Lichtblau should not be permitted to testify about the opinion of others, specifically Dr. McGirt and Dr. Milam's opinions, because they are not his own opinions. *Id.* at 11-12. Third, Defendant argues that Dr. Lichtblau's opinions on lumbar spine surgery and mild TBI are unreliable as the opinions rely on incomplete information and Plaintiff's claims rather than objective data. *Id.* at 12-15. Fourth, Defendant argues that Dr. Lichtblau does not rely on an objective diagnostic criteria and Dr. Lichtblau's experience

alone, without further explanation of how his experience informs his opinion, is not sufficiently reliable to meet the *Daubert* standard for reliability. *Id.* at 15-16.

This Court first finds that, because Plaintiff withdrew Dr. Lichtblau's opinion on the need for Plaintiff to receive lumbar fusion surgery, ECF No. [95] at 11, Defendant's objection to Dr. Lichtblau's opinion on the need for a lumbar fusion surgery is moot.

Next, the Court finds that Dr. Lichtblau will be allowed to testify about how Dr. McGirt's and Dr. Milam's opinions informed his analysis. As stated above, expert witnesses are afforded a degree of latitude to offer opinions, including those not based on first-hand knowledge or observation. *Daubert*, 509 U.S. at 592. However, experts are not allowed to serve as conduits for the opinions of others. *See Jones*, 2013 WL 8695361, at *6; *In re 3M Combat Arms Earplug*, 2021 WL 765019, at *45 (finding that an expert's opinion was admissible because it did not "simply parrot" another other expert's testimony). In *Jones*, the court precluded a witness from offering an expert medical opinion that was not his own. *See* 2013 WL 8695361, at *6. Unlike *Jones*, however, it is apparent that Dr. Lichtblau is not offering someone else's testimony but that he is offering his own opinion about Plaintiff's impairment, disability, and cost for future medical care that incorporates the opinions of others. ECF No. [80-5] at 2. As such, Dr. Lichtblau's opinion is similar to the expert opinion from *In re 3M Combat Arms Earplug*. 2021 WL 765019, at *45. In that case, the court found that the expert opinion at issue was admissible because, even though the expert relied on the opinion of others, the expert did not merely echo another expert's testimony. *See id*. Similarly, Dr. Lichtblau's opinion is admissible because he does more than echo Dr. McGirt's and Dr. Milam's opinions. Dr. Lichtblau's opinion on the need for a lumbar fusion surgery will still be inadmissible, irrespective of whose opinion Dr. Lichtblau relies upon, as Plaintiff has withdrawn Dr. Lichtblau's opinion on this matter.

The Court must next address Defendant's argument about the unreliability of Dr. Lichtblau's opinion regarding the condition of Plaintiff's lumbar spine and mild TBI. Defendant contends that Dr. Lichtblau did not review certain medical records from Dr. McGirt and Dr. Milam in forming his opinion as to Plaintiff's lumbar spine and Dr. Lichtblau inappropriately relied on Plaintiff's claims in forming his opinion on her mild TBI. ECF No. [80] at 12-15. However, as stated above, the Eleventh Circuit has determined that an objection based upon an expert opinion's reliance on incorrect assumptions attacks the weight and persuasiveness of the testimony, not its admissibility. *See Rosenfeld*, 654 F.3d at 1194. In *Rosenfeld*, the Eleventh Circuit found that an expert opinion based on incorrect assumptions was admissible and the opinion could be challenged on cross-examination. *See id.* As such, the claim that Dr. Lichtblau did not consider all of the relevant medical records and he relied too heavily on Plaintiff's claims does not make Dr. Lichtblau's testimony inadmissible.

Defendant relies on *Allison* to argue that when an expert does not document a purported medical condition through medical tests and instead relies on a patient's subjective complaints, the diagnosis is of "dubious weight." ECF No. [80] at 15; 184 F.3d at 1318. Defendant also relies on *Gen. Elec. Co.*, 522 U.S. at 146, and *Hoff v. Steiner Transocean, Ltd.*, No. 12–22329–CIV, 2014 WL 273075, at *2 (S.D. Fla. 2014), for the same proposition. ECF No. [80] at 13. However, the expert in *Allison* is distinguishable from Dr. Lichtblau because the expert in *Allison* relied solely on the patient's purported condition and did not objectively test the patient's purported condition. 184 F.3d at 1318. In this case, the record indicates that Dr. Lichtblau used a reliable method that included Plaintiff's claims as only one aspect of his overall analysis. ECF No. [80-5] at 2. This case is also distinguishable from *Gen. Elec. Co.*, 522 U.S. at 146, in that there is no significant analytical gap in the data and the opinion. Unlike the expert in *Gen. Elec. Co.*, Dr. Lichtblau

20

discusses his method extensively in his report. ECF No. [80-5]. Finally, Defendant misconstrues the holding in *Hoff*. 2014 WL 273075, at *4. In *Hoff*, the court admitted expert testimony even though the expert's methods did not rule out all possible causes of the plaintiff's injuries because there were sufficient indicia of reliability. *Id.* The record in this case similarly shows that Dr. Lichtblau provided sufficient indicia of reliability regarding his methods. ECF No. [80-5]. As such, the Court finds that Dr. Lichtblau's methods are reliable, and Dr. Lichtblau can testify about the condition of Plaintiff's lumbar spine and mild TBI.

The Court is not persuaded by Defendant's remaining arguments that Dr. Lichtblau did not rely on any objective diagnostic criteria and only relied on his experience without further elaboration. Defendant cites *Hamlett v. Carroll Fulmer Logistics Corp.*, 176 F. Supp. 3d 1360, 1365 (S.D. Ga. 2016) to argue that Dr. Lichtblau should have used objective diagnostic criteria and cites *Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 942-943 (11th Cir. 2015) to argue that Dr. Lichtblau cannot rely on his experience alone. ECF No. [80] at 15-16. However, as stated above, Dr. Lichtblau disclosed his criteria and did not merely rely on his experience to make his findings. ECF No. [80-5]. The Court finds *Frazier* to be instructive on this matter. 387 F.3d at 1261-62. In *Frazier*, the Eleventh Circuit found that courts must assess whether the methodology underlying the testimony is scientifically valid. *Id.* To make this determination, courts can examine whether the methodology has been subject to peer review and whether the technique is generally accepted in the scientific community. *Id.* (citing *Quiet Tech.*, 326 F.3d 1333 at 1341). The record in this case makes evident that Dr. Lichtblau's report includes extensive discussion on his methods, ECF No. [80-5], and that his methodology has been peer-reviewed and published in the International Journal of Physical Medicine and Rehabilitation. *Id.* at 2; *see also* ECF No. [95] at 9-10. As such,

Dr. Lichtblau relied on objective criteria recognized in his field and he did not rely solely on his experience without further elaboration.

In sum, Dr. Lichtblau will be limited to his expert opinion that does not pertain to Plaintiff's need for lumbar fusion surgery. Dr. Lichtblau will be permitted to give testimony on the condition of Plaintiff's lumbar spine and mild TBI.

### d. Dr. Suite

Defendant seeks to exclude Dr. Nicholas Suite ("Dr. Suite") who was retained by Plaintiff to testify about Plaintiff's mild TBI, lumbar spine, cervical spine, and cervical syrinx. ECF No. [80] at 16-17. Defendant raises five related arguments. First, Defendant argues that Dr. Suite's diagnosis of mild TBI relied on unreliable methods because he did not consider all of the relevant medical history. *Id.* at 16-19. Second, Defendant argues that Dr. Suite's opinions on Plaintiff's lumbar spine are not reliable because they are not his own. *Id.* at 19-20. Third, Defendant argues that Dr. Suite's opinions on Plaintiff's cervical spine condition are unreliable and more prejudicial than probative. *Id.* at 20. Fourth, Defendant argues that Dr. Suite's opinion on the cervical syrinx is inadmissible because his opinion on the cervical syrinx was not disclosed in his expert report. *Id.* at 20-21. Fifth, Defendant argues that Dr. Suite's opinion on the cervical syrinx is also inadmissible because it pertains to Plaintiff's incontinence, which the Court has struck as untimely. *Id.* at 21-22.

Although Dr. Suite did not consider all the relevant medical history in forming his opinion on Plaintiff's mild TBI, this alone does not make Dr. Suite's opinion on mild TBI inadmissible for using unreliable methods. As stated above, the Eleventh Circuit has determined that an objection that an expert opinion relies on incorrect assumptions attacks the weight and persuasiveness of the testimony, not its admissibility. *See Rosenfeld*, 654 F.3d at 1194. In *Rosenfeld*, the Eleventh Circuit

found that an expert opinion based on incorrect assumptions was admissible and that the opinion could be challenged on cross-examination. *See id.* Defendant relies on *Guinn v. AstraZeneca Pharm. LP*, 602 F.3d 1245, 1253 (11th Cir. 2010), in its Motion, ECF No. [80] at 18, as well as *Williams v. Mosaic Fertilizer, LLC*, 889 F. 3d 1239, 1245 (11th Cir. 2018), *Hendrix ex rel. GP v. Evenflo Co., Inc.*, 609 F. 3d 1183, 1197 (11th Cir. 2010), and *Haggerty v. Upjohn Co.*, 950 F. Supp. 1160, 1166 (S.D. Fla. 1996), in its reply, ECF No. [113] at 8, to support its contention that Dr. Suite should have considered pre-incident medical records to eliminate alternative causes. In *Guinn*, for instance, the court precluded an expert opinion because the expert did not adequately consider any of the many alternative causes. 602 F.3d at 1254. However, this case is distinguishable from *Guinn* and the cases cited because Dr. Suite explained why consideration of specific alternative causes was unnecessary in making his differential analysis and therefore explained why he did not need to review Plaintiff's complete medical record. ECF No. [80-13] at 95. As such, Dr. Suite's appears to have considered alternative causes to the extent necessary and, therefore, his opinion on Plaintiff's mild TBI is admissible.

Next, this Court finds that Dr. Suite's opinions about Plaintiff's lumbar spine are entirely from Dr. Milam and Dr. McGirt and therefore inadmissible. Similar to Dr. Lichtblau's opinions, Dr. Suite's opinion on Plaintiff's lumbar spine relies on Dr. Milam and Dr. McGirt's opinions. ECF No. [80-12] at 2. However, unlike Dr. Lichtblau who incorporates the opinions of others in forming his own opinion, ECF No. [80-5] at 2, Dr. Suite's opinion on the lumbar spine copies Dr. McGirt's opinion, ECF No. [80-12] at 2. Dr. Suite conceded that he "defer[s] the lumber spine determination to [Drs. Milam and McGirt]" in his report. ECF No. [80-12] at 5. While expert witnesses are afforded a degree of latitude to offer opinions, including those not based on first-hand knowledge or observation, *Daubert*, 509 U.S. at 592, experts are not permitted to serve as

conduits for the opinions of others. *See Jones*, 2013 WL 8695361 at \*6; *In re 3M Combat Arms Earplug*, 2021 WL 765019, at \*45 (finding that an expert's opinion was admissible because it did not "simply parrot" another other expert's testimony). In *Jones*, the court precluded a witness from offering expert medical opinion that was not his own. *See* 2013 WL 8695361, at \*6. Similarly, in this case, Dr. Suite will not be permitted to speak about Dr. Milam and Dr. McGirt's opinion on Plaintiff's lumbar spine. He may opine about other conclusions he formed by relying on Dr. Milam and Dr. McGirt's opinion. However, as Dr. Suite's testimony on the lumbar spine is solely attributable to Dr. McGirt, Dr. Suite may not serve as a conduit for Dr. McGirt's opinion.

Third, in regard to Plaintiff's cervical spine condition, Dr. Suite admitted that he would "like to amend [his] report before submitting it to The [*sic*] Court to say that there is no cervical disc herniation." ECF No. [80] at 20. Plaintiff failed to respond to Dr. Suite's withdrawal. ECF No. [95] at 18-20. Under the Local Rules, a "[f]ailure to respond to arguments in a motion to dismiss is a sufficient basis to dismiss such claims by default." S.D. Fla. Loc. R. 7.1(c); *see also Giuliani v. NCL (Bahamas) Ltd.*, No. 1:20-CV-22006, 2021 WL 4099502, at \*8 (S.D. Fla. Sept. 8, 2021). Based on Dr. Suite's withdrawal of his previous opinion on Plaintiff's cervical disc herniation and based on the applicable law, Dr. Suite's opinion regarding Plaintiff's cervical disc herniation is inadmissible.

Relatedly, according to Defendant's Motion, Dr. Suite's revised opinion regarding Plaintiff's cervical syrinx was not disclosed in Dr. Suite's expert report and was raised in Dr. Suite's deposition for the first time. ECF No. [80] at 20-21. The rules preclude parties from using undisclosed information to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. *See* Red. R. Civ. Proc. 37(c)(1); *see also Trinidad v. Moore*, No. 2:15cv323-WHA, 2016 WL 5341777, at \*4 (M.D. Ala. Sept. 23, 2016). In *Trinidad*,

the court did not permit an expert's testimony because the expert failed to disclose essential elements of his opinion beforehand. *See Trinidad*, 2016 WL 5341777, at *4. Similarly, in this case, Dr. Suite did not disclose his revised opinion regarding the cervical syrinx, nor has Plaintiff explained why the failure to disclose was substantially justified or harmless. ECF No. [95] at 18-20. As such, the Court finds that Dr. Suite's opinion regarding Plaintiff's cervical spine condition, including his opinion about the cervical syrinx, is inadmissible. *See* S.D. Fla. Loc. R. 7.1(c); *see also Giuliani*, 2021 WL 4099502, at *8. Moreover, to the extent that Dr. Suite's opinion suggests that Plaintiff's cervical syrinx is the source of Plaintiff's incontinence, that opinion is also inadmissible because any claims of incontinence have been stricken as untimely. ECF No. [72] at 7.

In sum, Dr. Suite will be limited to his expert opinion on Plaintiff's mild TBI, but he will not be permitted to give his opinion on Plaintiff's lumbar spine, cervical spine condition, cervical disc herniation, cervical syrinx, and incontinence.

### e. Dr. Salmansohn

Defendant seeks to exclude Dr. Lawrence Salmansohn ("Dr. Salmansohn") who was retained by Plaintiff to testify about Plaintiff's cognitive impairment. ECF No. [80] at 22. Defendant raises two related arguments. First, Defendant argues that Dr. Salmansohn, similar to Dr. Suite, failed to review Plaintiff's pre-incident medical records and relied on a narrative provided by Plaintiff and Plaintiff's husband. *Id.* at 22-23, 25. Second, Defendant argues that Dr. Salmansohn relied on unknown or unreliable methods. *Id.* at 23. Defendant relies on *Ciomber*, 70 F.3d 635 at 642, and contends that experts cannot cure deficiencies in their Rule 26(a)(2) report through deposition testimony. ECF No. [113] at 5-6.

The Court first finds that Dr. Salmansohn did not have to review Plaintiff's pre-incident medical records for his opinion to be admissible. As stated above, the Eleventh Circuit has determined that an objection that an expert opinion relies on incorrect or incomplete assumptions attacks the weight and persuasiveness of the testimony, not its admissibility. *See Rosenfeld*, 654 F.3d at 1194. In *Rosenfeld*, the Eleventh Circuit found that an expert opinion based on incorrect assumptions was admissible and that the opinion could be challenged on cross-examination. *See id.* As such, similar to Dr. Suite, Dr. Salmansohn can rely on incomplete information to form his expert opinion and Defendant can cross-examine Dr. Salmansohn on his bases. Defendant relies on three cases in which courts took issue with the fact that expert reports failed to consider alterative causes: *Williams*, 889 F. 3d at 1245; *Hendrix ex rel.*, 609 F. 3d at 1197; and *Haggerty*, 950 F. Supp. at 1166. ECF No. [113] at 6. However, unlike the experts in the three cited cases, Dr. Salmansohn explained why consideration of specific alternative causes from Plaintiff's pre-incident medical reports was unnecessary in making his differential analysis. ECF No. [80-15] at 74-75. Similar to Dr. Suite, Dr. Salmansohn purportedly did consider and dismiss alternative causes. Defendant can properly explore Dr. Salmansohn's considerations, or lack thereof, during cross-examination.

Next, Defendant again cites *Guinn*, 602 F.3d at 1253, and contends that Dr. Salmansohn's reliance on information provided by Plaintiff and Plaintiff's husband makes his methodology unreliable. In *Guinn*, the court precluded expert testimony from an expert who failed to use standard diagnostic techniques used by experts in his field. *Id.* at 1255. In this case, the record suggests that Dr. Salmansohn used a standard method that included Plaintiff and her husband's claims as one aspect of the overall analysis. ECF No. [80-16] at 13. Dr. Salmansohn's report describes a series of medical reports and tests that Dr. Salmansohn relied upon, in addition to

interviews with Plaintiff and Plaintiff's husband. *Id.* 9-13. As such, Defendant's contention that Dr. Salmansohn did not use the proper form of evidence in forming his opinion is unpersuasive.

Lastly, contrary to Defendant's argument, the Court finds that Dr. Salmansohn's report does reveal his methods. *Id.* at 13. Dr. Salmansohn's report includes discussion of the tests and scales he used in arriving at his conclusion. *Id.* Defendant's reliance on *Hamlett*, 176 F. Supp. 3d at 1365, *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, 395 F. 3d 416, 419 (7th Cir. 2005), and *U.S. v. Mamah*, 332 F. 3d 475, 478 (7th Cir. 2003), is misplaced given the discussion of Dr. Salmansohn's methodology in his report. ECF No. [80-16]. Unlike the experts in each of those cases, Dr. Salmansohn lists the tests he used, the results from the tests, and his interpretation of the results. *Id*. at 13, 24-26. Even if Dr. Salmansohn's report was missing certain aspects of his methodology, this Court has stated that Rule 26(a)(2) does not require an expert to provide every aspect that may be relevant to an expert's opinion in an expert report because the reports cannot realistically explore all the nuances of an expert's methodology. *Kleiman*, 2020 WL 6729362, at *7 (quoting *Etherton.,* 2011 WL 684592, at *2). Furthermore, Defendant's reliance on *Ciomber* to preclude Dr. Salmansohn from further explaining his methodology is again misplaced since the expert in *Ciomber* submitted "eight terse statements" concluding that a party was liable. 70 F.3d at 638. Dr. Salmansohn's 29-page report contains substantially more material information regarding his methodology than the expert report in *Ciomber*. ECF No. [80-16].

As such, Dr. Salmansohn's opinions will be admissible in their entirety.

### f.  Ms. Gill

Defendant seeks to exclude Ms. Joellen Gill ("Ms. Gill") who was retained by Plaintiff to testify as a human factors expert. ECF No. [80] at 26. Defendant raises seven related arguments. First, Defendant argues that Ms. Gill lacks the qualifications to offer opinions about the design of

the gangway or marine-related safety. *Id.* at 26-27. Second, Defendant argues that Ms. Gill did not inspect the gateway at issue and therefore her methods are unreliable. *Id.* at 28. Third, Defendant argues that Ms. Gill's opinion on the handrails is not helpful because Plaintiff never used the gangway handrails. *Id.* Fourth, Defendant argues that Ms. Gill's opinion on the handrails is more prejudicial than probative. *Id.* Fifth, Defendant argues that Ms. Gill's opinion on Plaintiff's conduct in reading the pamphlet shortly before her fall is not helpful. *Id.* at 28-29. Sixth, Defendant argues that Ms. Gill's opinion on the gangway inspection documents is unreliable because she relies on fictitious facts. *Id.* at 29-30. Seventh, Defendant argues that Ms. Gill's opinion about prior incidents is irrelevant. *Id.* at 30.

First, the Court analyzes whether Ms. Gill has the qualifications to give her expert opinion on the design of gangways and marine-related safety. As stated above, "[a]n expert is not necessarily unqualified simply because [his] experience does not precisely match the matter at hand." *J.G.*, 2013 WL 752697, at *3 (citing *Maiz*, 253 F.3d at 665). "[S]o long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *See Clena Invs., Inc.*, 280 F.R.D. at 661 (citing *Kilpatrick*, 2009 WL 2058384, at *1).

In this case, Ms. Gill is licensed by the Board of Certification and Professional Ergonomics as a Certified Human Factors Professional. ECF No. [80-18]. She has expertise on human factors engineering and safety and risk management, specifically in the areas of facility design, fall-at-elevation accidents, industrial accidents, automotive accidents, workplace injuries, and warnings. *Id.* She has analyzed the underlying causes of slips, trips, and missteps for more than twenty-five years. ECF No. [80-17] at 1. As such, she has sufficient expertise to opine on accidents that occur on elevated areas and how faulty facility design can contribute to such accidents. *See id.* The issue

for this Court is whether her expertise in accidents and facility design is sufficient to meet the necessary qualifications to opine on accidents that occur on gangways and marine-related safety. In addressing this issue, the Court again finds *J.G.*, 2013 WL 752697, at *3, to be instructive. In *J.G.*, the court found that a law enforcement officer was at least minimally qualified to testify about cruise-ship security even though he did not have a background in cruise-ship security. *Id.* at *3. Similarly, in this case, the Court finds that Ms. Gill is at least minimally qualified to give testimony on Plaintiff's fall on the gangway and marine-related safety given her expertise in fall-at-elevation accidents and human factors in general. ECF No. [80-17] at 1.

The Court also finds *Mizrahi v. Yamaha Motor Corp., U.S.A.*, No. 17-24484-CIV, 2019 WL 3318527, at *11 (S.D. Fla. July 19, 2019), to be instructive. In *Mizrahi*, the court found that a human factors expert had the qualifications to give his opinion on personal watercraft ("PWC") safety given his general expertise in human factors engineering, even though the defendant argued that the expert did not have experience with PWCs specifically. *See id.* The court found that the expert's "significant experience in the realm of human factors" was sufficient despite his lack of expertise on PWCs specifically. *Id.* The court in *Mizrahi* cited *Alexie v. Apex Tool Group, LLC*, No. 12–2212, 2014 WL 5603386, at *1-2 (E.D. La. Nov. 3, 2014), which this Court also finds to be instructive. In *Alexie*, the same expert from *Mizrahi* was permitted to give his expert opinion on the safety of a chain hook in a forklift even though he did not have specific expertise for forklifts and only had general expertise in human factors engineering. *See id.* Therefore, given Ms. Gill's expertise in fall-at-elevation accidents and facility design generally, this Court finds that she has the necessary qualifications as a human factors expert to give her expert opinion on gangways and marine-related safety, and that her lack of experience with gangways and marine-related safety goes to the weight of her opinion rather than the admissibility of her opinion.

Second, although Ms. Gill did not inspect the gateway at issue herself and relied on data provided by her colleague, the Court does not find her methods to be impermissibly unreliable. As stated above, experts have wide latitude to go beyond their first-hand knowledge and rely on information provided to them by others. *See Daubert*, 509 U.S. at 592. As such, the fact that Ms. Gill relied on her colleague's inspection of the gangway and his test results does not necessarily make her opinion inadmissible. In *City of St. Petersburg v. Total Containment, Inc.*, No. 06-20953-CIV, 2009 WL 3335013, at *4 (S.D. Fla. Mar. 19, 2009), the court found that an expert could rely on data from scientific tests performed by a non-witness as long as the conclusions were the expert's own opinion. Similarly, in this case, Ms. Gill relied on her colleague Dr. Hunter DeBusk's ("Dr. DeBusk") scientific tests of the gangway. ECF No. [80-17] at 1. Dr. DeBusk used an English XL tribometer to measure the slip resistance index of the gangway under various conditions. *Id.* at 7-8. Relying on Dr. DeBusk's slip resistance data as a part of her overall analysis, Ms. Gill concluded that the slope of the gangway would have been too steep to provide passengers with a reasonably safe surface. *Id.* at 8-9. Therefore, the Court is not persuaded by Defendant's argument that Ms. Gill's opinion should be excluded because she did not inspect the gateway or collect the data herself.

Third, the Court is not persuaded by Defendant's argument that Ms. Gill's opinion on the handrails is not helpful and that it is more prejudicial than probative. Defendant argues that because Plaintiff did not use the handrails that were near Plaintiff's vicinity when she fell, Ms. Gill's opinion on handrails that were never used is unhelpful and more prejudicial than probative. ECF No. [80] at 28. The Eleventh Circuit has determined that the helpfulness prong turns on whether the proffered expert testimony "concern[s] matters that are beyond the understanding of the average lay person." *Edwards*, 580 F. App'x at 823 (quoting *Frazier*, 387 F.3d at 1262). In this

case, Ms. Gill's opinion is helpful because her opinion purports to explain why various building codes, guidelines, and human engineering designs for marine systems require certain handrails on ramp slopes, which is beyond the understanding of the average lay person. ECF No. [95] at 26. Furthermore, Ms. Gill testified at her deposition how the ineffective design of the handrails at issue resulted in Plaintiff's failure to use the handrails. ECF No. [80-19] at 119. In other words, the fact that Plaintiff did not use the handrails does not make Ms. Gill's opinion unhelpful. Rather, Ms. Gill's opinion is helpful because it purports to explain why Plaintiff did not and could not use the handrails provided. *See id.* In sum, Ms. Gill's opinion regarding the handrails may be helpful in allowing the jury to better understand the extent of Defendant's liability caused by the faulty design and placement of the handrails. *See id.* at 111-12. For the same reasons, Defendant's argument that Ms. Gill's opinion regarding the handrails is more prejudicial than probative also fails as her opinion may prove to be highly probative as to Defendant's liability.

Nonetheless, the Court is persuaded by Defendant's argument that Ms. Gill's opinion on Plaintiff's conduct is not helpful. As noted above, in *Collins*, the Eleventh Circuit determined that an expert's opinion on the condition of the terrain in question was unnecessary given photographic evidence of the terrain. *See Collins*, 2012 WL 12948670, at *2; *see also Kessler v. NCL (Bahamas) Ltd.*, 19-CV-20583, 2019 WL 8128483, at *4 (S.D. Fla. Dec. 20, 2019). In this case, the jury can determine from CCTV evidence that Plaintiff was or was not reading a pamphlet. Unlike Dr. Sala's testimony, which went beyond simply describing what was evident from photographs by opining on how human factors interact with the environment around them, Ms. Gill's opinion on Plaintiff's conduct purports to describe what is readily evident from the CCTV footage without further analysis. ECF No. [80-17] at 16. Ms. Gill reports:

> For example, at the time of her injury incident, Ms. Bahr was walking 'normal speed' on a gangway/ramp that was provided for patrons on the NCL Pearl to

> disembark onto the dock in Skagway, Alaska. Ms. Bahr was wearing foreseeable footwear (i.e., one month old sneakers) and did not require prescriptive lenses (i.e., she previously had LASIK). Furthermore, there is nothing to suggest Ms. Bahr was under the influence of alcohol or recreational drugs. In addition, she was not carrying anything that would have obstructed her vision or compromised her balance; that is, Ms. Bahr was carrying a brochure that the NCL Pearl handed to her.

*Id.* (citations omitted). Such observations are readily apparent from the jury's own viewing of the footage, and Ms. Gill's opinion on Plaintiff's conduct is not necessary to decipher what is already evident from the footage. As such, Ms. Gill's opinion on Plaintiff's conduct is not helpful and inadmissible.

Next, Defendant's argues that Ms. Gill's opinion about gangway documentation being necessary to provide the infrastructure for controlling risks is unreliable. ECF No. [80] at 29-30. Defendant claims that Ms. Gill's opinion on this matter is unreliable because it is based on fictitious assumptions. *Id.* Defendant notes that Ms. Gill falsely claimed that she was not provided with any documentation of inspections, even though she received CCTV footage of inspections and reviewed Paul Fango's deposition in which he described inspections. *Id.* However, as noted above, in *Rosenfeld*, the Eleventh Circuit found that expert opinions based on incorrect assumptions should be admitted and later challenged on cross-examination. 654 F.3d at 1194. As such, Ms. Gill's opinion on the matter is admissible and may be challenged on cross-examination.

Lastly, the Court is persuaded by Defendant's final argument that Ms. Gill's opinion about prior incidents involving Mark Bock and Jeff Worley is irrelevant. Prior incident evidence is only permitted under the "substantial similarity" doctrine which requires the previous injuries to show that the defendant was warned of the danger. *See Heath v. Suzuki Motor Corp.*, 126 F.3d 1391, 1396 (11th Cir. 1997). The Eleventh Circuit sets forth several requirements to determine if evidence of a prior incident is admissible: (1) the conditions must be substantially similar; (2) incidents must not be too remote in time; and (3) there must be no prejudice or confusion of the

issues that outweighs the probative value of the evidence. *See Weeks v. Remington Arms Co.*, 733 F.2d 1485, 1491 (11th Cir. 1984). Defendant argues in its motion *in limine* against the admissibility of prior incidents involving Mark Bock and Jeff Worley because they fail to meet the requirements for substantial similarity. ECF No. [77] at 7-8. Plaintiff does not respond to the argument in its response to the motion *in limine* and concedes that Plaintiff will not call Mark Bock or Jeff Worley. ECF No. [98] at 9. As such, Ms. Gill's opinion about the prior incidents based on her conversations with Mark Bock and Jeff Worley is also inadmissible. If the incidents involving Mark Bock and Jeff Worley are not substantially similar and therefore inadmissible prior evidence, then it follows that Ms. Gill's opinion about the same dissimilar incidents is also irrelevant and inadmissible.

In sum, Ms. Gill's opinion on the design of the gangway, marine-related safety, gangway handrails, and the need for gangway inspection documents are admissible, but her opinion on Plaintiff's conduct in reading the pamphlet shortly before the incident and prior incidents involving Mark Bock and Jeff Worley are inadmissible.

### g. Mr. Padron

Defendant seeks to exclude Mr. Oscar Padron ("Mr. Padron") who is a CPA retained by Plaintiff to testify about Plaintiff's claimed damages. ECF No. [80] at 30-31. Defendant raises six related arguments. First, Defendant argues that Mr. Padron's opinion is inadmissible because it is based on Dr. Frain and Dr. Lichtblau's reports, which Defendant argues are inadmissible. *Id.* at 30. Second, Defendant argues that Mr. Padron's calculations based on the present value of future damages are unhelpful as they are basic calculations that the jury can do. *Id.* at 30-31. Third, Defendant argues that Mr. Padron's methods and opinions are not his own. *Id.* at 31-32. Fourth, Defendant argues that Mr. Padron's methods are unknown or unreliable. *Id.* at 32. Fifth, Defendant reiterates its second argument by claiming that Mr. Padron's opinions are not helpful and/or more

prejudicial than probative by relying on Dr. Frain and Dr. Lichtblau's reports. *Id.* at 33-34. Sixth, Defendant argues in its Reply that Mr. Padron cannot attempt to address the deficiencies in his report through deposition testimony. ECF No. [113] at 10.

Because the Court finds that Dr. Frain and Dr. Lichtblau's reports to be largely admissible, Defendant's first argument is moot. Second, the Court finds that Mr. Padron's opinion is more than a summation of future damages because he calculates two work life expectancies, an average work life expectancy, and an expectancy working until the normal social security retirement age. ECF No. [80-21] at 38-39. Mr. Padron's opinion further sheds light on the differences among the calculations, which may better inform the jury of potential damages. *Id.* at 38-45.

Third, as stated above, experts have wide latitude to go beyond their first-hand knowledge and rely on information provided to them by others. *See Daubert*, 509 U.S. at 592. The fact that Mr. Padron relies on the data others provided to him does not make his opinion inadmissible. Fourth, Mr. Padron explained, during his deposition, his methodology using various statistics, including mortality tables and inflation rates. ECF No. [80-21] at 38-45. As such, the Court does not find Mr. Padron's methods to be unknown or unreliable.

Fifth, because Mr. Padron's opinions rely on Dr. Frain's and Dr. Lichtblau's opinions, ECF No. [80-21] at 7, which this Court has found to be mostly admissible, it follows that Mr. Padron's opinions are helpful and not more prejudicial than probative. Finally, Defendant's reliance on *Ciomber*, 70 F.3d at 642, that experts cannot cure deficiencies in their Rule 26(a)(2) report through deposition testimony is misplaced. *Ciomber* is distinguishable from the present case in that the expert submitted "eight terse statements" concluding that a party was liable. 70 F.3d at 638. Mr. Padron's report is markedly distinguishable. Moreover, as stated above, Rule 26(a)(2) reports do not need to contain a complete discussion of the expert's methodology because the reports cannot

realistically explore all the nuances of an expert's methodology. *Kleiman*, 2020 WL 6729362, at *7. Mr. Padron's opinion will be admitted in its entirety.

## IV.    CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion, **ECF No. [76]**, is **GRANTED IN PART AND DENIED IN PART**. Defendant's Motion, **ECF No. [80]**, is **GRANTED IN PART AND DENIED IN PART**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on October 16, 2021.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record