UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-22973-BLOOM/Louis

MAI LIS BAHR,

    Plaintiff,

v.

NCL (BAHAMAS) LTD.,
*doing business as* NCL,

    Defendant.

_____/

## OMNIBUS ORDER ON MOTION FOR SANCTIONS AND MOTION FOR LEAVE TO SUPPLEMENT

**THIS CAUSE** is before the Court upon Defendant NCL (Bahamas), Ltd.'s ("Defendant") Renewed Motion for Sanctions Against Plaintiff, ECF No. [85] ("Motion for Sanctions"), and Defendant's Motion for Leave to Supplement Defendant's Renewed Motion for Sanctions Against Plaintiff with Newly Obtained Testimony from Plaintiff, ECF No. [141] ("Motion to Supplement"). With respect to the Motion for Sanctions, Plaintiff Mai Lis Bahr ("Plaintiff") filed a Response, ECF No. [108], to which Defendant filed a Reply, ECF No. [110]. Defendant also filed a Supplement to Defendant's Renewed Motion for Sanctions Against Plaintiff, ECF No. [87]. With respect to the Motion to Supplement, Plaintiff filed a Response, ECF No. [150], to which Defendant filed a Reply, ECF No. [156]. The Court has carefully considered the Motion, the record in this case, the applicable law, and is otherwise fully advised. For the reasons that follow, the Motion for Sanctions is denied, and the Motion to Supplement is denied.

Case No. 19-cv-22973-BLOOM/Louis

I.  **BACKGROUND**

On July 17, 2019, Plaintiff initiated the instant action against Defendant for injuries sustained while exiting the Norwegian *Pearl* onto the dock at the Port of Skagway, Alaska. *See* ECF No. [1]. Plaintiff was walking down a gangway between the *Pearl* and the dock, on July 18, 2018, when she slipped and fell near the end of the gangway, which she alleges was wet and slippery. *See id.* ¶ 8. Based on these allegations, the Complaint asserts a single count of maritime negligence against Defendant, claiming that Defendant breached its duty of care by "failing to maintain slip resistance materials; failing to provide adequate railings; failing to provide a safe walkway; [] failing to warn Plaintiff of the lack of an adequate railing; by providing a worn slip resistance surface material, and by failing to warn of the inadequate, and worn, slip resistant surface materials." *Id.* ¶ 9.

On September 27, 2019, Plaintiff served her Rule 26 Initial Disclosures and stated in regard to her damages:

> The Plaintiff is affirmatively seeking relief for all compensatory damages allowed by law including economic damages for medical bills, liens; past and future pain and suffering, based upon medical testimony, plaintiffs [sic] testimony and plaintiffs [sic] spouses [sic] testimony, medical records and bills, and is within the province of the jury to fairly determine such damages upon the evidence presented at trial in this proceeding.

ECF No. [74-1] at 3. Plaintiff thereafter filed Amended Rule 26 Initial Disclosures, which left unchanged the above damages disclosures. ECF No. [74-2] at 4. Plaintiff also served her Answers to Defendant's Initial Interrogatories. ECF No. [61-4]. In the Answers, Plaintiff stated, in relevant part,

> I have lost the ability to gain employment due to my inability to effectively manage my time, organize my thoughts, poor working memory, and fatigue. I tire easily from interactions. In the past, I have had roles in sales and marketing where I interact with many people during the day. The more interactions I have, the less I can recall and assign to the right person. I owned my own clothing line for 8 years which required effective time management, organizational skills, stamina, and

2

> recall. I would not be able to take on such work in my current state and if I remain in this current state, self-employment in this capacity could not be a consideration. Historically, I earned between $80-100K in pharmaceuticals working full-time, $40K working part-time doing medical liaison work part-time, and up to $40K from self-employment. I have always been productive and prided myself on working. Prior to the summer of 2018, I was in the process of monetizing a blog I started called People of Charlotte. Just as I was getting paid content, I got the concussion. Due to restrictions of working on computers, phones, writing, the lack of concentration, organization, headaches, fatigue, and other symptoms, I still have not been able to get the site monetized despite 18K followers and recognition from Charlotte media outlets. I am in the process of looking for someone to buy the site and all of its content or giving the site to a nonprofit with a caveat of being able to contribute to the site as I am able to. But I can no longer handle the content and feel overwhelmed and cannot deliver content in a timely manner any longer.

*Id.* at 8. Plaintiff thereafter filed Amended Answers, in which Plaintiff disclosed additional income but left relatively unchanged Plaintiff's original answer noted above. ECF No. [61-5] at 8-9.

On September 6, 2019, Defendant served its Initial Request for Production seeking tax documents for the past five years. ECF No. [61-6] at 5. According to Defendant, Plaintiff provided tax documents from 2007 to 2018 but did not provide tax documents from 2019 to 2020. ECF No. [85] at 5. As such, Defendant served its Supplemental Request for Production seeking tax documents from 2019 to 2021. *See id.* In response, Plaintiff stated, "Plaintiff did not have any income for 2019 and 2020." ECF No. [74-3] at 1. Plaintiff also stated, "Plaintiff did not have any income in 2020. Attached is the only proof of income, in the form of a bank statement, for 2021." *Id*. However, upon review of Plaintiff's expert disclosures, Defendant discovered additional sources of income in the relevant time period. *See* ECF No. [85] at 6; *see also* ECF No. [61].

On May 26, 2021, Defendant filed its first Motion for Sanctions against Plaintiff, in part due to the untimely disclosures. ECF No. [61]. Magistrate Judge Louis found that although Plaintiff had been late in disclosing certain facts, the untimely disclosures were not "willful." ECF No. [80-10] at 41. Magistrate Judge Louis granted Defendant an opportunity to re-depose Plaintiff, ECF No. [72], and Defendant filed its objections to Magistrate Judge Louis' Order, ECF No. [74].

3

After considering Defendant's objections to Magistrate Judge Louis's Order, this Court found that the relief afforded was not clearly erroneous or contrary to law and overruled Defendant's objections. ECF No. [109].

On July 1, 2021, shortly before Plaintiff's second deposition per Magistrate Judge Louis' Order, Plaintiff's Counsel advised Defendant's Counsel of three additional sources of income. *See* ECF Nos. [74-5], [108] at 9. Defendant subsequently canceled the second deposition, *see* ECF No. [108] at 10, and filed the instant Motion for Sanctions, *see* ECF No. [85]. In the Motion for Sanctions, Defendant seeks to dismiss the case with prejudice due to Plaintiff's failure to comply with discovery obligations. *See generally id*. Plaintiff responds that some of the disclosures should have been made earlier, but that the failure to disclose was not in bad faith and did not prejudice Defendant. *See* ECF No. [108] at 11-12.

On September 9, 2021, Defendant took Plaintiff's second deposition. *See* ECF No. [141] at 1. Defendant seeks leave to file a memorandum and/or relevant portions of Plaintiff's deposition transcript in support of its Motion for Sanctions. *See id.* at 1-2. Plaintiff responds that the Motion to Supplement should be denied because Defendant has not established harm or any sanctionable conduct. *See* ECF No. [150] at 8. The Court considers each Motion in turn.

**II.     LEGAL STANDARD**

    **A.  Motion for Sanctions**

In general, courts have broad, inherent authority to sanction parties who have acted in bad faith. *See Chambers v. Nasco, Inc.*, 111 S.Ct. 2123, 2132-33 (1991). The Eleventh Circuit has determined that the "[i]nvocation of a court's inherent power requires a finding of bad faith." *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995) (citing *Chambers,* 111 S.Ct. at 2135). When determining the appropriate sanctions, courts must inquire into the conduct and motive of a party,

rather than on the validity of the case. *Barash v. Kates*, 585 F.Supp.2d 1347, 1362 (S.D. Fla. 2006) (citing *Rothenberg v. Sec. Mgmt. Co., Inc.,* 736 F.2d 1470, 1472 (11th Cir. 1984)). Further, the "particularly severe sanction" of "outright dismissal of a lawsuit . . . is within the court's discretion." *Chambers*, 111 S.Ct. at 2133 (citing *Roadway Express, Inc. v. Piper,* 100 S. Ct. 2455, 2463 (1980)).

>Additionally, Rule 37(c) states, in relevant part:
>
>(c) Failure to Disclose, to Supplement an Earlier Response, or to Admit.
>  (1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>    (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure;
>    (B) may inform the jury of the party's failure; and
>    (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)—(vi).

Fed. R. Civ. P. 37(c). Rule 37(b)(2)(A)(v) allows the Court to dismiss the action or proceeding in whole or in part. *See* Fed. R. Civ. P. 37(b)(2)(A)(v).

### B. Motion to Supplement

"Courts within the Southern District have cautioned that only limited circumstances warrant the filing of supplemental materials." *AIM Recycling of Fla., LLC v. Metals USA, Inc.*, No. 18-CV-60292, 2019 WL 5963815, at *2 (S.D. Fla. Nov. 13, 2019) (citation and internal quotation marks omitted). "Supplements are to be used only for newly discovered evidence or information." *Girard v. Aztec RV Resort, Inc.*, No. 10-62298-CIV, 2011 WL 4345443, at *3 (S.D. Fla. Sept. 16, 2011). "[A] party may file a supplement when, through no fault of the filing party, certain relevant materials were not in the party's possession at the time that the party filed its

motion, response, or reply," or when such materials were not known to exist at the time of filing. *Girard*, 2011 WL 4345443, at *3.

Further, district courts have wide discretion to manage their own dockets. *Wilson v. Farley*, 203 F. App'x 239, 250 (11th Cir. 2006); *Dietz v. Bouldin*, 136 S. Ct. 1885, 1888-89 (2016) (noting that a district court has the inherent power "to manage its docket and courtroom with a view toward the efficient and expedient resolution of cases"). Courts may deny supplemental filings if the moving party submitted its underlying motion while its discovery requests were pending and later moved to supplement the motion with evidence produced pursuant to the discovery requests. *See Marajh v. Broadspire Servs., Inc.*, No. 07-60975-CIV, 2008 WL 5063870, at *11 (S.D. Fla. Nov. 21, 2008) (denying a motion to supplement when a party filed its motion for summary judgment while its discovery requests were pending and then sought to supplement the motion for summary judgment with evidence produced pursuant to the discovery requests).

### III. DISCUSSION

#### A. Motion to Supplement

First, the Court addresses Defendant's Motion to Supplement. In the Motion to Supplement, Defendant argues that the September 9, 2021 deposition testimony revealed evidence that was not previously available when the Motion for Sanctions was filed. ECF No. [141] at 2. Defendant argues that Plaintiff's testimony revealed relevant evidence that Plaintiff does not have a substantial justification for her late disclosures, the late disclosures cannot be considered harmless, Plaintiff did not make a good faith effort to determine her post-incident income, and the newly obtained testimony will further ensure a full understanding of the issues at hand. *See id.* at 8. Plaintiff responds that the deposition of Plaintiff, who is suffering from a brain injury, took five hours and amounted to a "memory test" that covered issues beyond the narrow area of inquiry

6

Case 1:19-cv-22973-BB   Document 170   Entered on FLSD Docket 12/14/2021   Page 7 of 15

Case No. 19-cv-22973-BLOOM/Louis

regarding her untimely disclosed income. ECF No. [150] at 2. Plaintiff argues that Plaintiff's inability to recall the details of her income and the nature of her contractual relationship with employer Dickens Mitchener does not shed light on her credibility and that Defendant has not "established harm or sanctionable conduct not already addressed." ECF No. [150] at 8. Plaintiff further argues that Plaintiff's response to Defendant's Supplemental Request for Production was not false. *See id.* Finally, Plaintiff attaches as an exhibit the entire deposition transcript. ECF No. [150-1].

As stated above, "a party may file a supplement when, through no fault of the filing party, certain relevant materials were not in the party's possession at the time that the party filed its motion, response, or reply," or when such materials were not known to exist at the time of filing. *Girard*, 2011 WL 4345443, at *3. In this case, Defendant is persuasive to the extent that it argues that the second deposition testimony revealed evidence not in Defendant's possession at the time of the filing of the Motion for Sanctions.

However, the Court may deny supplemental filings if the moving party submitted its underlying motion while its discovery requests were pending and later moved to supplement the motion with evidence produced pursuant to the discovery requests. *See Marajh*, 2008 WL 5063870, at *11. Although *Marajh* was decided in the context of a supplemental filing for a motion for summary judgment, the case is instructive. Similar to the movant in *Marajh,* who chose to file its motion for summary judgment while discovery requests were pending, Defendant chose to file its Motion for Sanctions before re-deposing Plaintiff pursuant to Magistrate Judge Louis' Order. *See* ECF No. [72]. Defendant cannot now seek to supplement its Motion on the grounds of newly discovered evidence when Defendant canceled the deposition and filed its Motion for Sanctions before re-deposing Plaintiff. *See Marajh*, 2008 WL 5063870, at *11.

Furthermore, based on the excerpts from the deposition transcript filed with Defendant's Motion to Supplement, ECF No. [141-1]; *see also* ECF No. [150-1], the deposition transcript and/or a memorandum on the deposition testimony would not make a difference to the Court's analysis on the Motion for Sanctions. The deposition testimony does not reveal Plaintiff's bad faith in failing to comply with discovery obligations or bring to light material conduct that was not already presented in the Motion for Sanctions. *See generally* ECF No. [141-1].[1] In sum, considering the Court's inherent power to manage its docket and courtroom with a view toward the efficient and expedient resolution of cases, the Motion to Supplement is denied.

### B. Motion for Sanctions

Next, the Court addresses Defendant's Motion for Sanctions. Defendant argues that Plaintiff has engaged in a pattern of discovery abuse warranting a determination of bad faith on the part of Plaintiff and dismissal with prejudice. ECF No. [85] at 2.[2] Defendant argues that the following conduct establishes a pattern of discovery abuse: Plaintiff's failure to include damages for lost wages and loss of earning capacity in her Initial Disclosures and Amended Initial Disclosures, *id.* at 2-3, Plaintiff's failure to supplement her Answers and Amended Answers to

---

[1] Magistrate Judge Louis indicated that Plaintiff's alleged brain injury was not an appropriate justification for untimely disclosures. *See* ECF No. [80-10] at 20, 22. The Court agrees. As such, the Court does not consider Plaintiff's alleged brain injury when addressing the merits of the Motion for Sanctions below. However, Plaintiff's inability to recall her sources of income or the nature of her contract for employment *during her deposition* could be explained by her alleged brain injury and, therefore, Plaintiff's responses during her deposition do not establish bad faith. Lastly, to the extent that Defendant argues that a second deposition would not cure the prejudice of the untimely disclosures due to the alleged brain injury, ECF No. [110] at 4, n.1, the Court notes that the deposition, tax documents, and other supporting documents, *see, e.g.*, ECF Nos. [150-2], [150-3], [150-4], cure any prejudice from the untimely disclosures.

[2] Defendant also argues that even if the Court determines that Plaintiff has not acted in bad faith, dismissal is appropriate under Rule 37(c)(1)(C). *See* ECF No. [85] at 2. Rule 37(c)(1)(C) allows for "appropriate sanctions" for failures to disclose, including dismissal pursuant to Rule 37(b)(2)(A)(v). *See* Fed. R. Civ. P. 37(c)(1)(C). However, the Supreme Court has stated that the "outright dismissal of a lawsuit" is a "particularly severe sanction[,]" and in the instant case, this Court does not consider dismissal pursuant to Rule 37(c)(1)(C) to be appropriate without a showing of bad faith. *See Chambers v. Nasco, Inc.*, 111 S.Ct. 2123, 2133 (1991) (citing *Roadway Express, Inc. v. Piper,* 100 S. Ct. 2455, 2463 (1980)).

Initial Interrogatories with earnings from real estate referrals (as well as additional untimely disclosed income), *id.* at 4, Plaintiff's failure to produce her recent tax documents and stating that she had no income in 2019 and 2020 in response to Defendant's Supplemental Request for Production, *id.* at 4-5, and Plaintiff's late disclosures of three additional sources of income after Magistrate Judge Louis' Order, *id.* at 7-8. Defendant argues that such failures damaged the integrity of the discovery process and that Defendant has been prejudiced by the late disclosures. ECF Nos. [85] at 2; [110] at 2-3. Plaintiff addresses each of Defendant's allegations and argues that Plaintiff did not act in bad faith and that Defendant was not prejudiced. *See generally* ECF No. [108]. The Court considers each allegation in turn.

### a. Damages for Lost Wages and Loss of Earning Capacity

First, Defendant contends that Plaintiff failed to include damages for lost wages and loss of earning capacity in her Initial Disclosures and Amended Initial Disclosures and that Plaintiff failed to provide documents and evidence upon which the computation for lost wages and loss of earning capacity claims are based. ECF No. [85] at 2-3. Plaintiff responds that the initial complaint specified damages including "loss of earning; loss of the ability to earn money and impaired earnings capacity." ECF No. [108] at 3; *see also* ECF No. [1] ¶ 13. Therefore, Plaintiff argues that Defendant was on notice that Plaintiff was seeking damages for lost wages and loss of earning capacity. ECF No. [108] at 3. Further, Plaintiff's Initial Disclosures state that Plaintiff is seeking "relief for all compensatory damages allowed by law including economic damages . . . " ECF No. [74-1] at 3. Plaintiff argues that a claim for lost earning capacity is a claim for compensatory damages. *See* ECF No. [108] at 3; *see also Yandell v. Christensen*, No. 3:16-CV-1028-J-39MCR, 2019 WL 5188366, at *4 (M.D. Fla. June 28, 2019), *report and recommendation adopted*, No. 3:16-CV-1028-J-39MCR, 2019 WL 5186649 (M.D. Fla. July 26, 2019) (awarding "economic

9

compensatory damages . . . for loss of future earning capacity"). Plaintiff also states that she provided expert reports detailing the computation for past and future loss of earning capacity. *See* ECF No. [108] at 7.

The Court agrees with Plaintiff. Even if Plaintiff's Initial Disclosures and Amended Initial Disclosures did not specifically elaborate on Plaintiff's claim for compensatory damages to include damages for lost wages and loss of earning capacity, Defendant was on notice of the claim for such damages and was not prejudiced. Expert reports on the computation for lost wages and loss of earning capacity claims were provided. ECF Nos. [80-1], [80-20]. Defendant further explored Plaintiff's lost earning claims at Plaintiff's first deposition. *See generally* ECF No. [80-4]; *see also* ECF No. [108] at 5. As such, the Court does not consider the failure to expressly detail a claim for lost wages and loss of earning capacity in the Initial Disclosures and Amended Initial Disclosures to establish the alleged pattern of noncompliance with discovery obligations.

### b. Failure to Supplement Answers and Amended Answers

Second, Defendant argues that Plaintiff's failure to supplement her Answers and Amended Answers to Initial Interrogatories with Plaintiff's earnings from real estate referrals was untimely. ECF No. [85] at 3-4.[3] Plaintiff concedes that the disclosures were untimely, ECF No. [108] at 10, but that Magistrate Judge Louis' Order already addressed the issue of Plaintiff's earnings from real estate referrals. ECF No. [72] at 10-11. Magistrate Judge Louis permitted Defendant to re-depose Plaintiff at Plaintiff's own cost, and this Court agreed that the second deposition was the appropriate relief. *See id.* at 11; *see also* ECF No. [109]. The Court still considers Plaintiff's second deposition to be the appropriate relief for Plaintiff's late disclosures, but the Court recognizes that

---

[3] While discussing Plaintiff's failure to supplement her Answers and Amended Answers to Initial Interrogatories, Defendant references Plaintiff's failure to include additional sources of income other than Plaintiff's real estate referrals. *See* ECF No. [85] at 4. The additional sources of income are addressed in a separate subsection below.

Plaintiff's failure to timely disclose earnings from real estate referrals may help establish a pattern of noncompliance if coupled with other evidence of noncompliance. The Court continues its analysis below to determine whether there is any other evidence of noncompliance.

### c. Tax Documents

Third, Defendant argues that Plaintiff failed to produce her recent tax documents and falsely stated that she had no income in 2019 and 2020 in response to Defendant's Supplemental Request for Production. ECF No. [85] at 4-6.[4] However, Plaintiff provided Defendant with a signed tax authorization form 8821 naming Defendant's Counsel as an appointee so that Defendant's Counsel could request the IRS to provide tax returns from 2015 to 2019. *See* ECF Nos. [108-2]; [108-3].[5] The Court considers the tax authorization form to be sufficient in satisfying Plaintiff's discovery obligations with respect to tax documents and not indicative of a willful refusal to produce tax documents.[6] Furthermore, to the extent that Plaintiff stated that she had no income in 2019, Plaintiff cannot be considered to have been acting in bad faith since the 2019 tax documents reveal that she had a net loss of approximately $2,500. ECF No. [108] at 6. To the extent that Plaintiff stated that she had no income in 2020, Plaintiff only earned a small sum of money as discussed below. The failure to disclose those minor amounts do not rise to a finding of willful noncompliance or bad faith. As such, Plaintiff's alleged failure to produce her recent tax

---

[4] Defendant concedes that Plaintiff provided tax documents from 2007 to 2018. *See* ECF No. [85] at 5.
[5] Plaintiff has not yet filed her 2020 taxes. *See* ECF No. [108-1].
[6] Since being informed of the IRS delays, Plaintiff provided 2019 tax documents to Defendant. *See* ECF No. [108-4]. Plaintiff notes that Defendant did not ask Plaintiff directly for 2019 tax documents after informing Plaintiff of the IRS delays on May 12, 2021. *See* ECF No. [108] at 7. Before May 12, 2021, Defendant appears to have informed Plaintiff on April 16, 2021, that it had not yet received tax documents from the IRS without mentioning any delay. *See* ECF No. [108-5]. It was reasonable for Plaintiff to assume that Defendant had exercised the IRS authorization and was in the process of obtaining all relevant tax documents at that time. Defendant's subsequent direct request for 2019 tax documents on April 22, 2021, included in the Supplemental Request for Production, was before Defendant informed Plaintiff of the IRS delays. Again, it was reasonable for Plaintiff to assume that Defendant had exercised the IRS authorization and was still in the process of obtaining all relevant tax documents from the IRS. *See* ECF No. [85] at 5.

documents and Plaintiff's claim that she had no income in response to Defendant's Supplemental Request for Production do not establish an alleged pattern of noncompliance.[7]

### d. Additional Sources of Income

Fourth, Defendant argues that Plaintiff's three additional sources of income disclosed after Magistrate Judge Louis' Order demonstrate bad faith and are prejudicial because they relate to Plaintiff's claim of lost wages and loss of earning capacity. ECF No. [85] at 7; *see also* ECF No. [74-5]. According to Plaintiff, before Plaintiff's second deposition, Plaintiff's Counsel disclosed "in an abundance of caution, and within an hour or so of learning of them" the following earnings: $500 from the sale of Plaintiff's artwork, $300 from the sale of a self-published book, and $5,000 from assisting her friend Beth Bradley. ECF No. [108] at 9; *see also* ECF No. [74-5]. Plaintiff argues that the sale of Plaintiff's artwork should not be considered earned income but a hobby. *See* ECF No. [108] at 9. Plaintiff notes that the sale of her book did not yield a profit as the expenses required to publish the book exceeded the $300 revenue. *See id.* Plaintiff states that the $5,000 from Beth Bradley was in regard to Plaintiff sending approximately forty (40) marketing packages per month by mail from her home, which took approximately two (2) days per month. *See* ECF No. [74-5]. Occasionally, Plaintiff took the packages to the recipients' office. *See id.*[8] Plaintiff argues that the late disclosures of "very minor earnings" do not prejudice Defendant's defense. ECF No. [108] at 10, 12. In its Reply, Defendant argues that the total dollar amount of the untimely disclosed income is impertinent. *See* ECF No. [110] at 6. Defendant argues that the late disclosures, irrespective of the total dollar amount, reveal a pattern of noncompliance. *See* ECF No. [85] at 2.

---

[7] To the extent that Defendant takes issue with Plaintiff's failure to provide the name of Plaintiff's accountant, *see* ECF No. [87], the Court notes that Plaintiff was under no further obligation to provide the name of Plaintiff's accountant after having already provided the IRS authorization form 8821, especially since Defendant did not ask for the accountant's name, *see* ECF No. [108] at 6.

[8] The deposition transcripts reveal that Plaintiff considered the assistance she provided to Beth Bradley to be a "favor for a friend" rather than "employment." *See* ECF No. [150-1] at 172.

Defendant further notes that "[d]ocuments illustrating income from this employment still have not been produced." *Id.*

The Court is not persuaded. The fact that the earnings were minor or resulted in a loss of income is relevant to the Court's analysis. The minor earnings or loss indicates that Plaintiff inadvertently overlooked the sources of income precisely because they were so minor or because they resulted in a net loss. The minor amount also suggests that Plaintiff believed in good faith that the disclosures were not necessary.[9] Additionally, the fact that Plaintiff was able to earn minor income, and in one instance lose money while attempting to do so, does not have a material impact on Plaintiff's claim that she can no longer be gainfully employed in the manner she disclosed in her Answers and Amended Answers to Defendant's Interrogatories. ECF Nos. [61-4] at 8, [61-5] at 8-9.

The cases that Defendant cites further distinguish the late disclosures in this case from the type of conduct that generally warrants a finding of bad faith. *See National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 US 639, 640 (1976) (holding that dismissal was appropriate "[a]fter seventeen months where crucial interrogatories remained substantially unanswered despite numerous extensions granted at the eleventh hour and, in many instances, beyond the eleventh hour, and notwithstanding several admonitions by the [district court] and promises and commitments by the plaintiffs"); *Malautea v. Suzuki Motor Co., Ltd.*, 987 F. 2d 1536, 1538-39 (11th Cir. 1993) (affirming the district court's sanctions when the sanctioned party willfully resisted discovery, deliberately withheld specific evidence the district court had ordered to be produced, and "presented no evidence showing that their failure to comply with the discovery

---

[9] To the extent that Plaintiff argues that the minor income inures to Defendant's benefit by mitigating Plaintiff's damages is inapposite. *See* ECF No. [108] at 11. The material issue is whether the untimely disclosures establish a pattern of noncompliance.

orders was due to misunderstanding or inability to comply"); *Connecticut General v. New Images*, 482 F. 3d 1091, 1094 (9th Cir. 2007) (affirming the district court's sanctions after the sanctioned parties "knowingly deceived the court and acted in bad faith" by submitting "perjured declarations, fabricated evidence and frivolous pleadings" culminating in years of evasion of discovery obligations); *Anheuser-Busch v. Natural Beverage Distributors*, 69 F. 3d 337, 351-52 (9th Cir. 1995) (affirming the district court's dismissal after the sanctioned party's pattern of deception and discovery abuse including "outright falsehoods" about documents being destroyed in a fire, concealment of documents for three years, and repeated violations of the district court's orders); *Vasquez v. Princess Cruise Lines, Ltd.*, No. 12-22022-CIV, 2013 WL 12061869, at *2 (S.D. Fla. Sept. 9, 2013) (dismissing the case after a litany of noncompliance, including several instances where the sanctioned party repeatedly changed his testimony); *Vilsant v. Saxon Mortg. Services, Inc.*, No. 08-61148-CIV, 2009 WL 413724, at *1, *4-5 (S.D. Fla. Feb. 18, 2009) (dismissing the case with prejudice after the sanctioned party did not timely respond to numerous discovery requests and court orders). Plaintiff's late disclosures of three small sources of income, to the extent that they can be considered income, are distinguishable from the willful noncompliance noted in the above-cited cases.[10]

The Court also notes that the documents substantiating the three sources of income have since been provided through Plaintiff's Response to the Motion to Supplement. *See* ECF Nos. [150-2], [150-3], [150-4]. In sum, the late disclosure of additional income does not establish a

---

[10] Defendant's Supplement, ECF No. [87], cites two Eleventh Circuit cases, which are also distinguishable from the instant case. *See Fountain v. United States*, 725 Fed. App'x. 891, 893-94 (11th Cir. 2018) (affirming the district court's dismissal after the sanctioned party's repeated refusal to attend properly noticed depositions despite a court order and despite the moving party's numerous offers to reschedule the depositions); *Aztec Steel Co. v. Florida Steel Corp.*, 691 F. 2d 480, 481 (11th Cir. 1982) (affirming the district court's dismissal after the sanctioned party failed to comply with the discovery process for six years).

pattern of noncompliance. As such, since there is no other willful noncompliance to couple with Plaintiff's untimely disclosure of income from real estate referrals, which has already been addressed, the Court determines that Plaintiff did not act in bad faith. The Motion for Sanctions is denied.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Sanctions, **ECF No. [85]**, is **DENIED**.
2. Defendant's Motion to Supplement, **ECF No. [141]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 14, 2021.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record