UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-22973-BLOOM/Louis

MAI LIS BAHR,

    Plaintiff,

v.

NCL (BAHAMAS) LTD.,
*doing business as* NCL,

    Defendant.
_____/

# ORDER

**THIS CAUSE** is before the Court upon Defendant NCL (BAHAMAS) LTD.'s ("NCL" or "Defendant") Motion for Clarification and/or Reconsideration of the Court's Orders on the Parties' Daubert Motions and Motions in Limine, ECF No. [163] ("Motion"). Plaintiff Mia Lis Bahr ("Bahr" or "Plaintiff") filed a Response in Opposition, ECF No. [165] ("Response"), to which Defendant filed a Reply, ECF No. [166] ("Reply"). The Court has carefully reviewed the Motion, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Motion is granted in part and denied in part consistent with this Order.

    **I. BACKGROUND**

Plaintiff initiated the instant action against Defendant for injuries sustained while exiting the Norwegian Pearl onto the dock at the Port of Skagway, Alaska. *See* ECF No. [1]. Plaintiff was walking down a gangway between the Pearl and the dock when she slipped and fell near the end of the gangway, which she alleges was wet and slippery. *See id.* ¶ 8. Based on these allegations, the Complaint asserts a single count of maritime negligence against Defendant, alleging that

Defendant breached its duty of care by "failing to maintain slip resistance materials; failing to provide adequate railings; failing to provide a safe walkway; [] failing to warn Plaintiff of the lack of an adequate railing; by providing a worn slip resistance surface material, and by failing to warn of the inadequate, and worn, slip resistant surface materials." *Id.* ¶ 9.

On October 18, 2021, the Court entered its Order on Motions to Strike/*Daubert* Motions, ECF No. [159] ("Order"), and on October 20, 2021, the Court entered its Omnibus Order on Motions *in Limine*, ECF No. [161] (collectively, with the Order on Motions to Strike/*Daubert* Motions, "Orders"). NCL filed the instant Motion, requesting clarification or, alternatively, reconsideration of the Court's Orders. ECF No. [163]. In particular, NCL requests that the Court: (1) find admissible Dr. Rosado's opinions on Plaintiff's malingering; (2) find admissible Dr. Rosado's factual observations; (3) preclude Dr. Lichtblau from offering opinions on the costs of a lumbar fusion surgery and future care costs associated with Plaintiff's spine; (4) preclude Dr. Lichtblau from offering undisclosed opinions from Drs. Milam and McGirt; and (5) find admissible Dr. Sala's opinion on Plaintiff's psychological diagnoses and medications. *See* ECF No. [163] at 14-15. Plaintiff opposes the Motion, arguing that the Court's ruling on Dr. Rosado's opinion requires no clarification, Dr. Lichtblau should be permitted to opine on Plaintiff's need for lumbar surgery and its costs, and Dr. Sala should not be permitted to testify on medical matters. *See generally* ECF No. [165].

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 60 permits a party to seek relief from a court order in certain, specific circumstances. Fed. R. Civ. P. 60. Pursuant to Rule 60(a), a "court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). However, "[w]hile the district court may correct clerical errors to reflect what was intended at the time of ruling, '[e]rrors that

affect substantial rights of the parties . . . are beyond the scope of rule 60(a).'" *Weeks v. Jones*, 100 F.3d 124, 128-29 (11th Cir. 1996) (quoting *Mullins v. Nickel Plate Mining Co.*, 691 F.2d 971, 973 (11th Cir. 1982)); *see also Paddington Partners v. Bouchard*, 34 F.3d 1132, 1140 (2d Cir. 1994) ("An error in a judgment that accurately reflects the decision of the court or jury as rendered is not 'clerical' within the terms of Rule 60(a)."). Thus, "[a] district court is not permitted . . . to clarify a judgment pursuant to Rule 60(a) to reflect a new and subsequent intent because it perceives its original judgment to be incorrect." *Weeks*, 100 F.3d at 129 (quoting *Burton v. Johnson*, 975 F.2d 690, 694 (10th Cir. 1992)). Rather, "[c]ourts will construe Rule 60(a) narrowly to bolster the finality of judgments and to block circumvention of more restrictive means to obtain review of orders[.]" *Paladin Shipping Co. v. Star Cap. Fund, LLC*, No. 10-cv-21612, 2014 WL 12685861, at *4 (S.D. Fla. Sept. 8, 2014) (internal quotation marks omitted). "If . . . cerebration or research into the law or planetary excursions into facts is required, Rule 60(a) will not be available to salvage the [party's] blunders." *Id.* (quoting *In re W. Tex. Mktg. Corp.*, 12 F.3d 497, 504-05 (5th Cir. 1994)).[1]

Rule 60(b), on the other hand, permits a court to relieve a party from a court's order for certain specifically enumerated reasons. Fed. R. Civ. P. 60(b).[2] "By its very nature, the rule seeks

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), the Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the Court of Appeals for the Fifth Circuit issued prior to October 1, 1981.

[2] Rule 60(b) states as follows:
> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> (1) mistake, inadvertence, surprise, or excusable neglect;
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4) the judgment is void;
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6) any other reason that justifies relief.

to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the 'incessant command of the court's conscience that justice be done in light of all the facts.'" *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981) (quoting *Bankers Mortg. Co. v. United States*, 423 F.2d 73, 77 (5th Cir. 1970)). Thus, a movant seeking relief pursuant to Rule 60(b) "must demonstrate a justification so compelling that the [district] court [is] required to vacate its order." *Cano v. Baker*, 435 F.3d 1337, 1342 (11th Cir. 2006) (per curiam) (quoting *Cavaliere v. Allstate Ins. Co.*, 996 F.2d 1111, 1115 (11th Cir. 1993)).

A motion for reconsideration is "an extraordinary remedy to be employed sparingly." *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1370 (S.D. Fla. 2002). As such, a court will not reconsider its prior ruling without a showing of "clear and obvious error where the 'interests of justice' demand correction." *Bhogaita v. Altamonte Heights Condo. Ass'n, Inc.*, No. 6:11-cv-1637-Orl-31, 2013 WL 425827, at *1 (M.D. Fla. Feb. 4, 2013) (quoting *Am. Home Assurance Co. v. Glenn Estess & Assoc.*, 763 F.2d 1237, 1239 (11th Cir. 1985)). Likewise, a motion for reconsideration "is not an opportunity for the moving party . . . to instruct the court on how the court 'could have done it better' the first time." *Hood v. Perdue*, 300 F. App'x 699, 700 (11th Cir. 2008) (citation omitted).

Nevertheless, a motion for reconsideration is "appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Kapila v. Grant Thornton, LLP*, No. 14-cv-61194, 2017 WL 3638199, at *1 (S.D. Fla. Aug. 23, 2017) (quoting *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992)). Ultimately, however, the grant or denial of reconsideration is a determination that is "left 'to the sound discretion' of the reviewing judge." *Arch Specialty Ins. Co. v. BP Inv. Partners, LLC*, No.

---

Fed. R. Civ. P. 60(b).

6:18-cv-1149-Orl-78DCI, 2020 WL 5534280, at *2 (M.D. Fla. Apr. 1, 2020) (quoting *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 806 (11th Cir. 1993)).

## III. DISCUSSION

### A. Dr. Rosado

First, the Court addresses NCL's request that the Court clarify or reconsider its Orders regarding Dr. Rosado. *See* ECF No. [163] at 3-8. In the Court's Order on Plaintiff's *Daubert* Motion, the Court stated that Dr. Rosado's personal opinion on Plaintiff's credibility is inadmissible but that Dr. Rosado's expert opinion on the test results and the basis for the test results are admissible. ECF Nos. [159] at 8-9; [161] at 6-7. NCL requests that the Court clarify its Order and find admissible Dr. Rosado's opinions on Plaintiff's malingering and Dr. Rosado's factual observations. *See* ECF No. [163] at 3-8. Plaintiff responds by quoting a portion of the Court's Order and arguing that the Order "clearly marks the line which Dr. Rosado may not cross" such that there is no need for further clarification. ECF No. [165] at 2. Plaintiff does not otherwise substantively respond to NCL's argument on this matter. *See generally id.*

The Court agrees with Plaintiff that the Court's Orders clearly set forth the line that Dr. Rosado may not cross. Nonetheless, to the extent that NCL seeks clarification regarding specific aspects of Dr. Rosado's testimony, the Court further clarifies as follows. As the Court stated in the Order on *Daubert* Motions, "results from the psychological examination, including Plaintiff's poor performance and inconsistency, [] are admissible because they are not credibility determinations but test results that show material discrepancies." ECF No. [159] at 9. Therefore, the excerpts from Dr. Rosado's Report that NCL quotes at length in the instant Motion are not personal opinions but test results and are admissible. ECF No. [163] at 4-5. Similarly, Dr. Rosado's expert opinion on how Plaintiff's lack of effort, poor performance, and non-compliance with instructions "affected the tests that assess Plaintiff's general intellectual ability, attention and concentration/working

5

memory, processing speed and mental flexibility, verbal functioning, visual functioning, memory functioning, visual functioning, visual memory, motor functioning, executive functioning, and her personality, behavioral, and emotional functioning" are admissible in accordance with the Court's Orders admitting test results. *Id.* at 4-5 (citations omitted). Also, portions from Dr. Rosado's report discussing the test results that NCL quotes in its Reply are similarly admissible as indicated in the Court's prior Orders. *See* ECF No. [166] at 3. The Court reiterates that such test results are not Dr. Rosado's personal opinions on credibility.

However, although Dr. Rosado may opine that Plaintiff's test results are consistent with "a psychological profile that does not accurately represent her true psychological functioning," that the test results should be "interpreted with high caution," and that the test results are consistent with someone who is "malingering," ECF No. [163] at 4, 5, Dr. Rosado may not offer an opinion on whether she believes Plaintiff is *intentionally* fabricating results and whether Plaintiff is therefore not credible. Offering an opinion on Plaintiff's intent to lie or an opinion on Plaintiff's credibility would improperly invade the province of the jury who is to make all credibility determinations. *See United States v. Beasley*, 72 F.3d 1518, 1528 (11th Cir. 1996) ("Expert medical testimony concerning the truthfulness or credibility of a witness is generally inadmissible because it invades the jury's province to make credibility determinations.").

To further clarify, the Court notes that portions of the Court's prior Orders determining that Dr. Rosado is not permitted to offer her personal opinion on Plaintiff's credibility was to address Plaintiff's justified concern that Dr. Rosado may opine on matters outside her expert report. Plaintiff stated in her *Daubert* Motion, "Dr. Rosado should be limited to opinions contained *within her reports*, based on facts and data upon which similar experts generally rely and which do not include her personal opinion on the Plaintiff's credibility, truthfulness, effort, or anything approaching the merits of the case." ECF No. [76] at 14 (emphasis added). While Dr. Rosado may

6

opine on expert opinions contained *within her report*, including the test results and the basis for her test results such as Plaintiff's lack of effort as noted above, Dr. Rosado may not opine on matters *beyond her report*.[3] That is, Dr. Rosado may not opine on Plaintiff's general credibility, truthfulness, or the merits of the case, which would be her personal opinion beyond the test results in her report.[4]

In regard to NCL's request for clarification regarding Dr. Rosado's factual observations made during the interview, the Court again does not see the need for further clarification. NCL states that the Court "appears to have excluded factual observations made during Dr. Rosado's interview with Plaintiff . . . ." ECF No. [163] at 7. NCL does not, however, cite any portion of the Court's Orders in which the Court purportedly excluded factual observations. *See id.* The Court plainly did not exclude such factual observations. *See generally* ECF Nos. [159], [161]. Dr. Rosado's factual observations are not her personal inferences about Plaintiff's credibility. They are observations based on personal knowledge that Dr. Rosado made during the course of Dr. Rosado's interview, which Dr. Rosado used to form her expert opinion. Dr. Rosado will be permitted to discuss factual observations that formed the basis of her expert opinion that Plaintiff's lack of effort, poor performance, and non-compliance with instructions affected the test results.

**B. Dr. Lichtblau**

Second, the Court addresses NCL's request that the Court clarify or reconsider its Order regarding Dr. Lichtblau. *See* ECF No. [163] at 8-12. The Court determined that Dr. Lichtblau was

---

[3] To be clear, Dr. Rosado's report does not appear to include any personal opinions of Plaintiff's intent to lie or Plaintiff's credibility. *See generally* ECF No. [76-3].

[4] In the Motion and the Reply, NCL attempts to distinguish Dr. Rosado's opinion from expert opinions in several cases. *See* ECF Nos. [163] at 6-7 (citing *U.S. v. Beasley*, 72 F.3d 1518, 1528 (11th Cir. 1996); *Kleiman v. Wright*, 18-CV-80176, 2020 WL 6729362, at *10 (S.D. Fla. Nov. 16, 2020)), [166] at 2-3 (citing *Gen. Tel. Co. v. Wallace*, 417 So. 2d 1022, 1023 (Fla. 2d DCA 1982)). As stated above, the Court agrees with NCL's analysis to some extent. The cases cited are inapposite in regard to test results *within the report*, which are not personal opinions on credibility. However, the cases cited are instructive in regard to any potential personal opinion *beyond the report* to which Plaintiff anticipates and objects.

not permitted to offer testimony on any matters regarding Plaintiff's need for a lumbar fusion surgery because Plaintiff withdrew Dr. Lichtblau's testimony on this matter. *See* ECF No. [159] at 19. NCL now seeks clarification on whether Dr. Lichtblau's opinion on the costs of lumbar fusion surgery is also inadmissible. *See* ECF No. [163] at 9. NCL argues that the costs of lumbar fusion surgery are irrelevant if Plaintiff cannot provide admissible evidence regarding Plaintiff's need for lumbar fusion surgery through Dr. Lichtblau or otherwise. *See id.* NCL also argues that the Court should preclude Dr. Lichtblau from offering opinions on the future care costs associated with Plaintiff's spine, separate and apart from the costs of a lumbar fusion surgery, because Dr. Lichtblau's opinion on such matters is the purported opinions of Drs. Milam and McGirt. *See id.* Plaintiff responds that Dr. Lichtblau should be permitted to offer his opinion on the costs for lumbar fusion surgery, which is properly based on Dr. Lichtblau's discussions with Drs. Milam and McGirt. *See* ECF No. [165] at 3-5. Plaintiff does not specifically address NCL's arguments with regard to future care costs, separate from the costs of a lumbar fusion surgery. *See generally id.*

In addressing NCL's *Daubert* Motion, the Court determined that because Plaintiff had withdrawn Dr. Lichtblau's testimony on the *need* for lumbar fusion surgery, Dr. Lichtblau's testimony on lumbar fusion surgery was moot. ECF No. [159] at 19. Implicit in the Court's determination, which the Court now makes explicit, is that Dr. Lichtblau will not be permitted to discuss the *costs* of a lumbar fusion surgery. Evidently, if Plaintiff withdrew Dr. Lichtblau's testimony on the need for lumbar fusion surgery and cannot provide evidence for the need for lumbar fusion surgery, it logically follows that any testimony on the costs of an unneeded lumbar

fusion surgery is irrelevant. Therefore, the Court makes express the implied holding in its previous Order that Dr. Lichtblau's opinion on the costs of lumbar fusion surgery is inadmissible.[5]

Next, in regard to future care costs, unrelated to the lumbar fusion surgery, the Court again reiterates relevant portions of its previous Order. Dr. Lichtblau will be permitted to opine on the condition of Plaintiff's lumbar spine and mild TBI, as well as the costs associated with the care of such conditions. *See* ECF No. [159] at 22. Although NCL argues that Dr. Lichtblau's testimony is based on hearsay from Drs. Milam and McGirt and that Dr. Lichtblau cannot serve as a "conduit[] for the opinions of others," ECF No. [163] at 9, expert witnesses are afforded a degree of latitude to offer opinions, including those not based on first-hand knowledge or observation. *See Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Further, as NCL concedes, this District has previously determined that "Rule 703 affords expert witnesses a degree of flexibility with respect to the rule against hearsay[.]" ECF No. [163] at 11 (quoting *Mamani v. Berzain*, 07-22459-CIV, 2018 WL 1010582, at *3, n.6 (S.D. Fla. Feb. 22, 2018)); *see also United States v. Scrima*, 819 F.2d 996, 1002 (11th Cir. 1987) (holding that an expert may rely on hearsay evidence as a basis for their expert opinion); *United States v. Rollins*, 862 F.2d 1282, 1293 (7th Cir. 1988) (admitting the hearsay statements as part of the basis for an expert opinion).

In this case, the Court sees no justified reason to amend its previous determination to admit Dr. Lichtblau's opinion on the condition of Plaintiff's lumbar spine and mild TBI. With regard to

---

[5] Plaintiff's Response appears to misinterpret the Court's Order on the matter by arguing that the Court permitted Dr. Lichtblau to "testify that the Plaintiff's treating physicians have informed him that it is their opinion that [lumbar fusion] surgery will be necessary." ECF No. [165] at 4. The Court did not make such a determination. *See generally* ECF No. [159]. Rather, the Court determined that any testimony from Dr. Lichtblau on the need for lumbar fusion surgery is moot given Plaintiff's decision to withdraw Dr. Lichtblau's testimony on the need for lumbar fusion surgery. *See id.* at 19. Plaintiff cannot now attempt to have Dr. Lichtblau opine on the need for lumbar fusion surgery by attempting to introduce the opinions of others on the need for lumbar fusion surgery. As the Court stated in its Opinion, "Dr. Lichtblau's opinion on the need for a lumbar fusion surgery will still be inadmissible, irrespective of whose opinion Dr. Lichtblau relies upon, as Plaintiff has withdrawn Dr. Lichtblau's opinion on this matter." *Id.* at 19.

9

Plaintiff's lumbar spine and mild TBI, Dr. Lichtblau is not merely serving as a conduit for the opinions of Drs. Milam and McGirt in an attempt to introduce hearsay under the guise of a testifying expert. Based on Dr. Lichtblau's 277-page report, the opinions of Drs. Milam and McGirt were only two of the many sources of information that Dr. Lichtblau used to form his own opinion, *see generally* ECF No. [80-5] at 89, and Dr. Lichtblau's opinion on the lumbar spine and mild TBI is evidently not an attempt to circumvent the hearsay rules.[6] Therefore, NCL has failed to demonstrate that Dr. Lichtblau is attempting to introduce "backdoor" hearsay testimony regarding the condition of Plaintiff's lumbar spine and mild TBI. If Dr. Lichtblau's testimony at trial regarding the condition of Plaintiff's lumbar spine and mild TBI appears to be an attempt to improperly use Rule 703 as a "backdoor" hearsay exception, NCL may raise an objection at that time so that the issue can be resolved in the proper context.[7,8]

---

[6] NCL quotes a few pages within Dr. Lichtblau's report in which Dr. Lichtblau references Drs. Milam and McGirt. *See* ECF No. [163] at 9 (quoting ECF No. [80-5] at 73-80). However, Dr. Lichtblau follows up the specific references to Drs. Milam and McGirt by listing several sources of information – other than Drs. Milam and McGirt – which he relied on to estimate the need and costs for Plaintiff's future care. *See* ECF No. [80-5] at 89.

[7] To the extent that NCL argues that Drs. Milam and McGirt's opinions do not support Dr. Lichtblau's conclusions, *see* ECF No. [163] at 11-12, NCL may cross-examine Dr. Lichtblau as the Court noted in its previous Order, *see* ECF No. [159] at 20.

[8] Lastly, in regard to Plaintiff's withdrawal of Dr. Lichtblau's testimony on the need for lumbar fusion surgery, the Court notes that if Plaintiff were to argue that she only withdrew Dr. Lichtblau's own opinion that Plaintiff needed lumbar fusion surgery and that she did not withdraw Dr. Lichtblau's testimony that he relied on Drs. Milam and McGirt's opinions regarding the need for lumbar fusion surgery, then the matter may not be moot. However, any attempt to then introduce Dr. Lichtblau's testimony that he relied on Drs. Milam and McGirt's opinions regarding the need for lumbar fusion surgery would be an attempt to use Rule 703 as a "backdoor" to introduce hearsay testimony regarding Plaintiff's alleged need for lumbar fusion surgery after failing to disclose Drs. Milam and McGirt as experts and provide their expert reports. Plaintiff would be improperly attempting to address the "missing link" regarding the need for lumbar fusion surgery as noted by Magistrate Judge Louis. ECF No. [67] at 25. As such, even if Plaintiff did not withdraw Dr. Lichtblau's testimony that he relied on the opinions of others in forming his opinion on the need and cost for lumbar fusion surgery, and Dr. Lichtblau's testimony regarding lumbar fusion surgery was not moot, Dr. Lichtblau's testimony that he relied on the other doctors' opinions regarding the need for lumbar fusion surgery would be inadmissible for improperly attempting to admit hearsay testimony using Rule 703. As noted above, the same cannot be said for Dr. Lichtblau's other opinions regarding the condition of Plaintiff's lumbar spine and mild TBI, which Plaintiff never withdrew and do not appear to be an improper attempt to introduce hearsay testimony through Rule 703.

10

**C. Dr. Sala**

Third, the Court considers NCL's request that the Court clarify or reconsider its Order regarding Dr. Sala. *See* ECF No. [166] at 9. In the Order, the Court found that Dr. Sala was qualified in human factors and psychology and could opine on matters within his expertise, but any medical opinions were inadmissible. *See* ECF No. [159] at 7. The Court based its decision – that Dr. Sala was not permitted to opine on medical matters – on Plaintiff's contention in Plaintiff's *Daubert* Motion that Dr. Sala intends to opine on Plaintiff's medical condition, namely sleep apnea. *See* ECF No. [76] at 6-7. Curiously, NCL did not contest Plaintiff's claim that Dr. Sala intends to opine on sleep apnea in NCL's Response to Plaintiff's *Daubert* Motion. *See generally* ECF No. [99]. Because NCL did not dispute that Dr. Sala would be opining on sleep apnea, the Court presumed that Dr. Sala did in fact intend to opine on Plaintiff's non-psychological medical condition.

However, in the instant Motion, NCL states, for the first time, that Dr. Sala will not be opining on Plaintiff's sleep apnea. *See* ECF No. [163] at 13. According to NCL, Dr. Sala's opinion will only concern non-medical psychological conditions, namely ADHD and the effects of ADHD medications on perceptual, locomotive, and behavioral abilities, which fall within the purview of a human factors expert with a Ph.D. in psychology. *See id.* at 13-15. In Plaintiff's Response to the instant Motion, Plaintiff does not address NCL's new contention that Dr. Sala does not intend to discuss sleep apnea or any other medical condition, which directly contradicts Plaintiff's representation in Plaintiff's *Daubert* Motion that Dr. Sala intends to discuss sleep apnea. *See generally* ECF No. [165]. Rather, Plaintiff merely claims that NCL raises new "arguments that it failed to make in its prior response." *Id.* at 3.[9]

---

[9] Plaintiff also rebuts NCL's reliance on *Scaccetti v. NCL (Bahamas) Ltd.*, No. 17-23888-CIV-SCOLA/TORRES, 2018 WL 6200011 (S.D. Fla. Nov. 27, 2018), by quoting the *Scaccetti* court's holding striking Dr. Sala's physiological opinion due to his lack of reliable methodology. *See* ECF No. [165] at 3.

NCL's contention that Dr. Sala will not be offering a medical opinion on Plaintiff's sleep apnea does not require the Court to fundamentally change its previous decision. Dr. Sala will still not be permitted to opine on medical matters, but he will be permitted to opine on non-medical matters, including psychological conditions, such as ADHD and the effects of ADHD medications.[10] As stated in the previous Order, Dr. Sala will be permitted to offer a "non-medical expert opinion on human factors," ECF No. [159] at 8, which includes his opinion on Plaintiff's psychological conditions, because Dr. Sala has the expertise to opine on such matters. The Court's previous Order excluding Dr. Sala's "medical opinion" was a reference to sleep apnea and any other non-psychological medical condition.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that NCL's Motion, **ECF No. [163]**, is **GRANTED IN PART AND DENIED IN PART** as follows:

1. Dr. Rosado may opine on test results and the basis for her test results, including her factual observations, within her report. Dr. Rosado may not opine on her personal opinion on Plaintiff's credibility that is not included in her report.

2. Dr. Lichtblau may not opine on any matter related to Plaintiff's lumbar fusion surgery, including the need and cost for the surgery. Dr. Lichtblau may offer his opinion on the condition of Plaintiff's lumbar spine and mild TBI, as well as the associated costs of future care for such conditions.

3. Dr. Sala may opine on psychological conditions, such as ADHD and medications for

---

However, the fact that the court in *Scaccetti* excluded Dr. Sala's physiological opinion for his lack of reliable methodology does not advance Plaintiff's argument that the Court should exclude Dr. Sala's opinion on psychological conditions for his lack of appropriate qualifications.

[10] The Court does not consider psychological conditions such as ADHD, which may be diagnosed by a psychologist without a medical degree, to always constitute a medical condition, which generally requires diagnosis by a doctor with a medical degree.

ADHD. Dr. Sala may not opine on other non-psychological medical conditions, such as sleep apnea.

4. The Motion is **DENIED** in all other respects.

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 3, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record