U.S. DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
IN ADMIRALTY

CASE NO.: 19-cv-22973-BLOOM/LOUIS

MAI LIS BAHR,

Plaintiff,

vs.

NCL (BAHAMAS) LTD. d/b/a NCL,

Defendant,

_____/

**DEFENDANT'S MOTION AND INCORPORATED MEMORANDUM TO COMPEL UPDATED RESPONSES TO DISCOVERY AND FOR LEAVE TO PURSUE ADDITIONAL DISCOVERY RELATING TO PLAINTIFF'S WORK AS A LICENSED REAL ESTATE AGENT/BROKER AND FOR CONTINUANCE OF TRIAL**

Defendant, NCL (Bahamas) Ltd. ("Norwegian"), pursuant to Federal Rule of Civil Procedure 37 and Southern District Local Rule 26.1(g), requests the Court to compel Plaintiff to supplement her initial disclosures, to produce additional responsive documents, to supplement prior answers to interrogatories, for leave to pursue additional discovery relating to Plaintiff's work as a real estate agent/broker, and to remove this case from the February 14, 2022 trial docket and to continue the trial to allow this to be accomplished.

**INTRODUCTION**

The adversarial process requires the parties to provide access to information necessary to prosecute or defend a claim. This exchange of information requires full disclosure and "[d]iscovery is not supposed to be a shell game, where the hidden ball is moved round and round

1

and only revealed after so many false guesses are made and so much money is squandered." *Miccosukee Tribe of Indians of Fla. v. Cypress, et al.,* 2013 WL 10740706 (S.D. Fla., June 28, 2013). Whether intentionally or inadvertently, Plaintiff has not produced a significant amount of information relevant to her claim of traumatic brain injury and her capacity to earn.

Most significantly, although Plaintiff indicated she was unable to work in real estate, she has, in fact, been working as a licensed real estate agent/broker for Dickens Mitchener (a real estate agency) since at least 2021. In a May 13, 2021 response to a subpoena duces tecum to Dickens Mitchener, the company produced a document reflecting payments to Plaintiff in connection with properties located at 1703 Saint Emillion St., Brentwood, CA, which sold on April 12, 2021 for $1,228,482 and a second property located at 235 Milford Circle, Mooreseville, NC, which sold on December 30, 2020 for $2,342,358. These sales and payments to Plaintiff were also reflected in documents Plaintiff produced on May 28, 2021. Then on January 13, 2022, Plaintiff produced different bank statements reflecting income earned relating to these properties.

In addition to the foregoing property sales, Norwegian discovered through online research the sale of two *different* residential properties: a home at 719 E 35th St., in Charlotte, NC, for $895,000 and another house at 223 Wakefield Drive, Charlotte, NC for $225,000.[1] Once Norwegian discovered these sales and conferred with opposing counsel, Plaintiff produced some documents reflecting money she received regarding these two properties – first through a "screen shot" from her cell phone on December 17, 2021, and then a bank statement on January 13, 2022, also reflecting these payments to Plaintiff a year earlier.[2]

---

[1] 2 < https://www.realtor.com/realestateagents/5fdb786db28d6d0012be2cc4# > (12/2/2021

[2] Norwegian referenced these two properties in its Second Motion for Leave to Supplement Defendant's Renewed Motion for Sanctions Against Plaintiff with Newly Obtained Evidence of Plaintiff's Undisclosed Income, which Norwegian withdrew as moot. In its notice withdrawing

Although Plaintiff has now produced documents evidencing at least these four property sales in 2021, she still has not produced closing statements, commission statements, or other documents corroborating the sale price of these homes or, more importantly, explaining her role in connection with these transactions or the basis for her commission.[3] Plaintiff has never served amended answers to interrogatories identifying her work as a licensed real estate agent/broker or describing her precise role for which she has apparently received tens of thousands of dollars.

To be clear, Norwegian is not seeking sanctions but, instead, wants merely to level the playing field so it can obtain necessary discovery and fairly defend itself against Plaintiff's claims of permanent injury and loss of earning capacity – the two most significant damage factors in this lawsuit.[4] Plaintiff's work as a licensed real estate agent/broker is a critical factor that impacts both the extent of Plaintiff's claimed injuries and her claim of loss of earning capacity. Plaintiff testified that she suffered a traumatic brain injury that left her unable to work in the real estate field, and her vocational rehabilitation expert reported that Plaintiff was limited to unskilled labor. That Plaintiff is now working as a licensed real estate agent/broker and is involved with selling million-

---

the Second Motion for Leave to Supplement, Norwegian indicated that it was doing so without prejudice to pursuing relief for Plaintiff's outstanding discovery obligations. [DE 172].

[3] Despite Norwegian's outstanding request for "tax returns, pay stubs, W2's and 1099 statements for 2016, 2017, 2018, 2019, and 2020," Plaintiff has only produced her 2019 return, so Norwegian remains uncertain as to Plaintiff's actual lost wage claim calculation. And more importantly, because Plaintiff did not initially disclose these sales Plaintiff made as a real estate agent/broker, Norwegian has been hampered in its ability to pursue third-party discovery regarding Plaintiff's job responsibilities and performance.

[4] Norwegian's counsel sent a detailed email to Plaintiff's counsel outlining the various documents requested, and the parties engaged in a Zoom conference to discuss discovery on January 10, 2022. Although Plaintiff's counsel agreed to provide certain updated information and did so (although it remains inadequate), Plaintiff's counsel did not agree to Norwegian's request to reopen discovery. See Exhibit A.

dollar properties demonstrates that the magnitude of her injuries is nowhere near as severe as originally reported, and this will also impact her loss of earning capacity claim.

Moreover, Plaintiff's belated production raises more questions and warrants an order compelling Plaintiff to produce **all** documents relating to her work as an agent/broker. Norwegian respectfully requests the Court to compel Plaintiff to fulfill her discovery obligations, and to allow Norwegian leave to pursue limited third-party discovery regarding Plaintiff's work as a real estate agent/broker. Finally, Norwegian requests the Court to continue this trial so that Norwegian has a meaningful opportunity to pursue limited third-party discovery regarding Plaintiff's lost income and ability to earn.

## PROCEDURAL AND FACTUAL HISTORY

Plaintiff alleges she fell on a gangway while exiting a Norwegian cruise in Alaska on July 18, 2018 and suffered, among other things, a traumatic brain injury with profound consequences impacting every aspect of her life. In describing her damages through initial disclosures served on September 27, 2019, and in Verified Amended Answers to Defendant's Initial Interrogatories served on February 26, 2020, Plaintiff swore that she "lost the ability to work" due to her inability to "effectively manage" time, organize her thoughts and because of poor memory and fatigue. See Exhibit B (Initial Disclosures, September 27, 2019) and Exhibit C (Verified Amended Answers to Initial Interrogatories, February 26, 2020).[5]

Norwegian first deposed Plaintiff on December 4, 2019. Exhibit D (Plaintiff Deposition, Dec. 4, 2019). She testified that she had a real estate license that was inactive, that she had not

---

[5] Norwegian served its Initial Interrogatories to Plaintiff on September 6, 2019 requesting Plaintiff to identify pertinent employment information and all sources of lost income and anticipated lost earning capacity. Exhibit F (Initial Interrogatories, DE 61-3). Before she served her Verified Answers in February 2020, Plaintiff served Answers to Defendant's Initial Interrogatories, unverified, on October 22, 2019, which contained substantially the same language referenced

4

previously sold real estate, and she would be unable to sell real estate due to the accident because she could not "remember one house from the other" and that it was "all jumbled in my head." Exhibit D at 25-16; 199. Plaintiff lamented that although she would like to work in real estate, she could not "even imagine doing that right now." Exhibit D at 204.

Dr. Julianne Frain, Ph.D., Plaintiff's expert, conducted a vocational evaluation to assess Plaintiff's "level of re-employability" and to address "the impact related to her injuries and her ability to work." Exhibit E at 2 (Frain Report). In her May 7, 2021 report, Dr. Frain concluded that "Ms. Bahr is not currently employed. She did affiliate her real estate license with a real estate group last October, but she has not been actively working in real estate." Exhibit E at 3. Dr. Frain found that Plaintiff has "difficulty communicating verbally with others as she struggles to find the right words and follow conversations." Exhibit E at 6. According to Dr. Frain, the "best case scenario" for Plaintiff is that she "can function in an unskilled, entry level position with accommodations as such as a cashier, sales representative, or ticket taker." Exhibit E at 13.[6]

---

above regarding Plaintiff's loss of her "ability to work." See Exhibit G (Answers to Initial Interrogatories, DE 61-4). None of Plaintiff's interrogatory answers – verified or unverified – identified Plaintiff's work as a holding a real estate agent/broker's license or indicated that Plaintiff might return to work in the real estate industry. On April 15, 2021, Plaintiff served Amended Rule 26 Initial Disclosures that, again, did not provide information regarding this critical factor in evaluating Plaintiff's damages and loss of earning claim. See Exhibit H (Amended Rule 26 Disclosures).

[6] Contrary to Dr. Frain's May 7, 2021 report, Norwegian would later discover that Plaintiff entered into an Independent Contractor Agreement **dated September 17, 2020** with Dickens Mitchener & Associates, Inc. Plaintiff did not produce the Independent Contractor Agreement through discovery but, instead, attached it to her October 1, 2021 Response to Defendant's Motion for Leave to Supplement Defendant's Renewed Motion for Sanctions Against Plaintiff with Newly Obtained Testimony from Plaintiff (Motion for Leave to Supplement). Exhibit I (DE 150-5). During Dr. Frain's deposition, she admitted that Plaintiff reactivated her real estate license and that Plaintiff had, in fact, received income from real estate transactions; however, Dr. Frain said that she was unaware of this information when she prepared her report. Exhibit J at 108-11, 186 (Frain Deposition, June 2, 2021).

Despite Dr. Frain's "best case scenario" for Plaintiff's employment outlook as a "cashier, sales representative, or ticket taker," Norwegian would later discover that Plaintiff works in the real estate industry as a licensed real estate agent/broker involved in selling high-value residential real estate. Norwegian first discovered this fortuitously and served a third-party subpoena to Dickens Mitchener real estate agency in May 2021, requesting Plaintiff's personnel file, and served its April 22, 2021 Supplemental Request for Production requesting Plaintiff to produce contracts with Dickens Mitchener, to which Plaintiff responded that there were none.[7] See Exhibit K (Subpoena to Dickens Mitchener); Exhibit L (Supplemental Request for Production); Exhibit M (Response to Supplemental Request for Production).

On May 17, 2021 NCL filed a motion seeking sanctions[8] against Plaintiff for non-disclosure of information. Exhibit N (DE 61). On June 22, 2021, following a hearing, the Magistrate Judge ruled that Plaintiff violated federal rules of civil procedure when she did not disclose her working relationship with Dickens Mitchener and earnings in her response to written

---

[7] This was not disclosed through Plaintiff's initial disclosures or in response to Norwegian's preliminary discovery requests. For example, in Defendant's Initial Request for Production to Plaintiff, NCL requested "[a]ny and all documents which support the allegations" of the Complaint along with "all income tax returns filed" in the preceding five years. Exhibit O at 4 (Initial Request for Production). Norwegian also asked for all documents "used to calculate the loss of future earning capacity of the Plaintiff and financial loss to the Plaintiff as a result of the incident alleged in the Complaint." Exhibit O at 4. Plaintiff never identified her work as a real estate agent/broker for Dickens Mitchener. Plaintiff only revealed this employment relationship when she spoke to Norwegian's examining psychologist in February 2021 and admitted that she had reactivated her real estate license in October 2020, had been working for Dickens Mitchener since the Fall 2020, and received a commission in January 2021. Plaintiff Deposition, Sept. 9 at 81.

[8] Norwegian filed its Motion for Enlargement of time for Defendant to disclose Experts and Complete Discovery and for Sanctions Against Plaintiff. Exhibit N. The Magistrate Judge held a hearing on Norwegian's Motion on May 26, 2021.

6

discovery. Exhibit P at 4 (DE 72).[9] As the Magistrate Judge wrote, Plaintiff "failed to timely disclose and supplement discovery responses with her Social Security Administration earnings statement, her earnings through referrals for real estate sales, and the fact that she reactivated her real estate license in October 2020." Exhibit P at 10. The Magistrate Judge also explained that "[t]he relevance of these documents and information cannot be disputed; Plaintiff claims lost wages and loss of earning capacity resulting from her injuries, and in order to properly review and rebut Plaintiff's claim for these damages, it is necessary for Defendant to possess the information regarding Plaintiff's employment and earnings." Exhibit P at 10. The Court reiterated that Plaintiff's "apparent ability to sell real estate is relevant to her injuries in addition to her damages." Exhibit P at 11. Although Norwegian challenged certain aspects of the Magistrate Judge's Order, the Court maintained the Magistrate Judge's ruling. [DE 74, 109].[10]

The Magistrate Judge ordered Plaintiff to appear for a second deposition which occurred on September 9, 2021. At the deposition, Plaintiff described the process of activating her real estate license after the subject accident. Exhibit Q at 62 (Plaintiff Deposition, Sept. 9, 2021). To do so, Plaintiff took a 68-hour online course involving real estate rules and contract principles.

---

[9] At the hearing, Plaintiff's counsel asserted, *inter alia,* that "[a]ll income was disclosed throughout the case, in interrogatories, in depositions . . . ." Exhibit R at 17-190 (DE 67).

[10] On July 15, 2021, Norwegian filed its Renewed Motion for Sanctions against Plaintiff based upon the additional disclosures of wage information occurring between the Magistrate Judge's initial ruling and the follow-up deposition of Plaintiff. [DE 85]. On July 19, 2021, Norwegian filed its Supplement to Defendant's Renewed Motion for Sanctions against Plaintiff and on December 14, 2021, its Second Motion for Leave to Supplement Defendant's Renewed Motion for Sanctions against Plaintiff with Newly Obtained Evidence of Plaintiff's Undisclosed Income [DE 87]; [DE 168]. On December 14, 2021, the Court denied Norwegian's Renewed Motion for Sanctions and Norwegian's Motion for Leave to Supplement. [DE 170]. On December 20, 2021, Norwegian filed its Notice of Withdrawing as Moot its Second Motion for Leave to Supplement its Renewed Motion for Sanctions but noted that it was not "waiving its right to pursue other available remedies relating either to outstanding discovery or to enforce Plaintiff's continuing obligation to supplement discovery under Federal Rule of Civil Procedure 37." [DE 172].

Exhibit Q at 63-64, 68. Plaintiff explained that as an agent/broker she is expected to sell real estate, handle real estate transactions, and work with the referral department. Exhibit Q at 79-80, 86-87.

Although Norwegian received a document in response to the subpoena to Dickens Mitchener reflecting at least two payments to Plaintiff, Plaintiff only provided deposit information regarding these payments – first in May, 2021 and then again on December 17, 2021 through a single page from a Merrill account and then cell phone "screen shots" from a Bank of America application identifying two deposits. See Composite Exhibit S (May and December 17, 2021 production). But despite requests for additional materials relating to the sale of real estate, Plaintiff still has not produced real estate sales contracts or closing statements, commission statements, bank records or corroborating financial documents reflecting the sale price of the property or the percentage of her commission. And although Plaintiff sent Norwegian additional documents on January 13, 2022 following a conference between counsel, Plaintiff has never supplemented her answers to interrogatories under oath to delineate her income from Dickens Mitchener or to even confirm her work for the company. On the contrary, in Plaintiff's most recent Verified Amended Answers to Defendant's Initial Interrogatories dated February 26, 2020, she maintained that she "lost the ability to work" and claimed that the "more interactions I have, the less I can recall and perform." See Exhibit C at 7-8.

Norwegian respectfully requests the Court to compel Plaintiff to produce all documents relevant to her ability to work as a real estate agent/broker and reflecting all commissions paid to her in this capacity, and to mandate complete, sworn updated answers to prior interrogatories. Norwegian further requests the Court to allow limited, follow-up discovery directed toward Dickens Mitchener and depositions of those individuals with whom Plaintiff has worked in the real estate industry. The documents produced, on their own, do not allow Norwegian to establish

8

what activities Plaintiff performed or the extent of her capabilities. Norwegian contends that only through third-party discovery directed toward Plaintiff's employer will Norwegian be able to unearth additional evidence crucial to its defense against Plaintiff's claim that she is permanently disabled, the amount of her lost wages, and her lost earning capacity, if any.

## ARGUMENT

### I. THE COURT SHOULD COMPEL PLAINTIFF TO UPDATE HER INITIAL DISCLOSURES, PROVIDE ADDITIONAL DOCUMENTS, AND AMEND HER INTERROGATORY ANSWERS

The "purpose of discovery under the Federal Rules is to require the disclosure of all relevant information, so that the ultimate resolution of disputed issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result." *Powers v. Target Corp.,* 2020 WL 409534, *1 (S.D. Fla. Jan. 24, 2020). Additionally, liberal discovery rules "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *Rozier v. Ford Motor Co.,* 573 F.2d 1332, 1346 (5th Cir. 1978).

It is not Norwegian's burden to continuously pursue the production of additional documents Plaintiff has not produced. Discovery is not a "strategic game to avoid disclosure and frustrate" an opponent or a "desultory game of hide and seek." *Miccosukee Tribe of Indians of Fla.,* 2013 WL 10740706 at *2, citing *Dreith v. Nu Image, Inc.,* 648 F.3d 779, 790 (9th Cir. 2011). On the contrary, "[d]iscovery is meant to take the game playing *out* of the trial process, not simply add another stage to the process where the parties can cagily engage in obfuscation and evasion." *Id.*, citing *Bethesda Softworks LLC v. Interplay Entertainment Corp.,* No. DKC 09-2357, 2011 WL 1559308 (D. Md. Apr. 25, 2011) (emphasis in original); *see Sciele Pharma, Inc. v. Brookstone Pharm., LLC*, 1:09-CV-3283-JEC, 2011 WL 3844891, at *4 (N.D. Ga. Aug. 30, 2011) (holding

that under Rule 34, a party has a duty to make a good faith effort to obtain responsive documents and to produce any documents that are discovered as a result of that effort.).

Under Fed.R.Civ.P. 26(e), a "party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect . . . ." Fed.R.Civ.P. 26(e). Moreover, a party has a duty to supplement timely. *Lincoln Rock, LLC v. City of Tampa*, No. 8:15-CV-1374-T-30JSS, 2016 WL 6138653, at *11 (M.D. Fla. Oct. 21, 2016) ("Rule 26(a)(1)(E) requires a party to make its initial disclosures 'based on the information then reasonably available to it' and '[a] party is not excused from making its disclosures because it has not fully investigated the case.' . . . The Court holds that Plaintiff's notifying Defendant of its intention to seek its attorneys' and consultants' fees, of over $150,000, two weeks before the close of discovery, despite having the information available to it since before the time its Initial Damages Disclosure was served, was untimely."); *see Caruana v. Marcum*, No. 3:01-CV-1567, 2016 WL 4060691, at *3 (M.D. Tenn. July 28, 2016) (internal quotations omitted) ("Rule 26(e) does not give license to sandbag one's opponent with new information that should have been disclosed earlier."). And the "duty to supplement continues after the close of discovery." *Rodriguez v. IBP, Inc.,* 243 F.3d 1221, 1230 (10th Cir. 2001).

On January 13, 2022, following informal requests for more information between counsel, Plaintiff produced for the first time online banking printouts that correlate to the screenshots from a cell phone banking application produced in December reflecting October and November 2021 deposits. See Exhibit T. But Plaintiff also produced two additional printouts revealing a January 12, 2021 deposit for $3,354.12 and a January 12, 2021 deposit for $7,874.85 that appear to reflect

income for more sales not previously disclosed. See Exhibit T. Plaintiff has never produced closing statements or contracts regarding the properties that would allow Norwegian to authenticate the documents, examine the basis for this income, determine how the income was calculated, or explore what tasks Plaintiff did to earn the commissions – all of which is critical to Plaintiff's claimed inability to work due to cognitive impairment.

Also included in the January 13, 2022 production is a single document titled "Disbursement Authorization Data." See Exhibit T. Although not specified anywhere on the document, the sale amount appears to correlate to the sale of 223 Wakefield, which then begs the question as to why Plaintiff has not produced disbursement authorization data sheets for the other properties for which a commission was paid. Norwegian should have the opportunity to depose Dickens Mitchener personnel regarding the Disbursement Authorization Data in order to understand the basis for money paid to Plaintiff, which is relevant to the magnitude of her alleged brain damage claim and her ongoing capacity to earn.

In addition to the outstanding documents, Plaintiff has also failed to amend her interrogatory answers <u>under oath</u> to identify any of the four known property sales despite the continuing duty to do so.[11] *See Boldstar Tech., LLC v. Home Depot, Inc.*, No. 07-80435, 2008 WL

---

[11] Plaintiff recently produced 2019 tax documents she had received on September 28, 2020, but she had failed to produce with her responses to Norwegian's April 22, 2021 Supplemental Requests for Production served on May 28, 2021. [DE 85 at 2]. Norwegian's Supplemental Request for Production No. 1 sought "Plaintiff's tax returns, pay stubs, W2's and 1099 statements for years 2016, 2017, 2018, 2019, and 2020." Pursuant to this Request, Plaintiff's duty to produce her tax returns "extended to those documents" which Plaintiff had "a legal right and/or practical ability to obtain from third parties," such as her accountant or the IRS, "regardless of whether such documents [were] in [her] immediate possession." *Kelley v. Boosalis*, No. 18-cv-868, 2019 WL 5061340, at *1 (D. Minn. Oct. 9, 2019); *Saravia v. Dynamex, Inc.*, No. 14-05003, 2016 WL 4140509, at * 5 (N.D. Cal. August 4, 2016) (requiring plaintiffs to produce "all federal tax records within their possession or that they have authority to obtain (such as from an accountant or from TurboTax").

11320003, at * 1 (S.D. Fla. March 28, 2008) (compelling signed verification of interrogatory responses) (citing *Saria v. Mass. Mut. Life Ins. Co.*, 228 F.R.D. 536 (S.D. W. Va. 2005) (discussing purpose and importance of requirement that answers to interrogatories be made under oath, including that "[s]eeking information through interrogatories is an efficient and cost-effective method of discovery and marshaling evidence for trial," and that, because "interrogatory responses may be used at trial, they are nothing short of testimony").

Another recently-produced document is The Mentor Program Handbook (the "Handbook"). After Plaintiff's court-ordered September 2021 deposition, Plaintiff first attached the Handbook as an exhibit to her response to Defendant's Motion for Leave to Supplement Defendant's Renewed Motion for Sanctions Against Plaintiff with Newly Obtained Testimony from Plaintiff [DE 150]. Plaintiff then formally produced the Handbook on January 13, 2022 as part of her supplemental disclosures. See Exhibit U.

The Handbook highlights the intensity of Plaintiff's training at Dickens Mitchener and further debunks her claimed injuries and loss of earning capacity. But the Handbook makes clear that even more information is available that Plaintiff must produce. For example, under the Mentor/Mentee Program outlined within the Handbook, Plaintiff and her Mentor agreed, *inter alia,* that they would meet at least once each week in person or by telephone; that the Mentee would shadow the Mentor for a 90-day period; and that the Mentor and Mentee would work together and be mutually helpful to each other. See Exhibit U. The Mentor/Mentee Progress Tracking checklist includes suggested activities during mentorship such as the recommendation to "[b]e in the office at least 20 hours per week"; to "create distribution lists"; to "create a business plan"; and to

"explore different ways of creating a Comparative Market Analysis." See Exhibit U.[12] Plaintiff should be compelled to produce such documents because they undermine her contention that she suffered a traumatic brain injury that relegates her to menial tasks. Norwegian should have the right to review all documents pertinent to Plaintiff's capacity to work in the real estate field and, further, should have the opportunity to present the documents to its experts to assess whether the type of work she is doing is consistent with her brain injury claim.

Furthermore, the Mentor/Mentee Tracking checklist in the Handbook is blank and, therefore, does not identify the four properties Plaintiff apparently sold over the past year or contain any performance evaluations -- despite an area in the checklist designated for this purpose. A document that tracks Plaintiff's sales and includes feedback upon her work performance is highly relevant because it would provide critical insight regarding Plaintiff's claimed inability to work and is vital to Norwegian's contention that Plaintiff did not suffer debilitating brain injury and has the capacity to earn. Of course, Norwegian should have the chance to depose Plaintiff's Mentor, who will have first-hand knowledge regarding Plaintiff's capabilities as a real estate agent/broker.

At this stage, whether Plaintiff has intentionally withheld information or simply failed to produce documents due to oversight is not at issue through this Motion. Norwegian only requests the Court to Order Plaintiff to fulfill these obligations so that Norwegian will have the opportunity

---

[12] That Dickens Mitchener and Plaintiff's Mentor trust Plaintiff in this role speaks volumes, especially when during the 12-month mentorship, Plaintiff was required to provide a percentage of her commission to her Mentor. See Exhibit U. Further, Plaintiff's ability to meet with a Mentor once per week, to "shadow" the Mentor during real estate transactions, and to, among other things, create a business plan is contrary to Plaintiff's claim that she cannot organize her thoughts due to her confusion and fatigue.

to a fair trial.[13] Thus, Norwegian respectfully requests an Order compelling Plaintiff to produce, in accordance with her duty to supplement her discovery responses, (1) **all** documents pertaining to commissions earned as well as listing agreements for homes sold for which a commission has not yet been paid, and (2) the completed Mentor/Mentee Tracking checklist and all performance evaluations reflecting Plaintiff's role as a Mentee. *See Orrell v. Motorcarparts of Am., Inc.*, 2007 WL 4287750, at *8 (W.D.N.C. Dec. 5, 2007) (ordering the plaintiff to supplement her response and provide a complete response to a request for production regarding post-termination income from a realty company and the plaintiff's "side business," notwithstanding the plaintiff's contention that she "ha[d] submitted the documents requested," because the plaintiff's post-termination income was "relevant and material to Plaintiff's duty to mitigate her lost wages"); *Fontana v. CEC Entertainment, Inc.*, 2008 WL 170974 (M.D. La. Jan. 18, 2008) (compelling production of bank account statements to show deposits and withdrawals related to the plaintiffs' landscaping business, which was relevant to the plaintiffs' claims for lost earnings and lost earning capacity); *De Louis v. Metropolitan Atlanta Rapid Transit Authority*, 2006 WL 8431824 (N.D. Ga. July 31, 2006) (explaining that the plaintiff had "put his financial condition at issue by asserting damages claims for 'lost wages' and 'future lost wages'").

## II. THE COURT SHOULD REOPEN DISCOVERY FOR THE LIMITED PURPOSE OF ALLOWING NORWEGIAN TO FULLY EXPLORE PLAINTIFF'S WORK AS A LICENSED REAL ESTATE AGENT/BROKER

Despite the Magistrate Judge's sanction and the follow-up deposition of Plaintiff, Norwegian remains in the dark about Plaintiff's previous earnings from Dickens Mitchener and,

---

[13] In Plaintiff's September 9, 2021 deposition, she referenced a written contract with a prospective buyer, but she has never produced this document. Plaintiff Deposition, Sept. 9, 2021 at 90-91. Plaintiff has also not produced the contracts for the four sold properties for which she obtained apparent commissions. Norwegian is entitled to copies of these contracts to ascertain the price of the properties at issue and to test whether Plaintiff has accurately identified her commission.

more importantly, her work capabilities and earning capacity now and into the future. Norwegian retrieved from the Dickens Mitchener website and from Plaintiff's business Facebook profile never-disclosed information evidencing a series of property listings relating to Plaintiff that are worth tens of millions of dollars. See Exhibit V and Exhibit W. For example, the Dickens Mitchener website identifies an approximately 10,000 square foot home listing Plaintiff as the broker which sold on July 26, 2021 for $5,300,000. See Exhibit V. Plaintiff testified that the properties reflected on the Dickens Mitchener website were not all her listings, but that Dickens Mitchener set up the website so that if someone contacts her for a certain property, she would be entitled to a commission. Exhibit Q at 101. When asked why Dickens Mitchener would designate her as the contact person for multiple, million-dollar properties if she was not the listing agent, Plaintiff responded, "you'd have to ask Dickens Mitchener why they set the website up like that, but that's how they do it." Exhibit Q at 101. Norwegian should have the right to depose personnel at Dickens Mitchener regarding these undisclosed documents and to explore why the company designated Plaintiff on the website as a listing agent for multiple properties and the status of such listings. Norwegian should also have the opportunity to ascertain if there have been sales for which a commission is owed and will be paid to Plaintiff at some point, especially considering that the website identifies several properties ranging from $2 Million to $5 Million. See Exhibit V.

      Most importantly, Norwegian needs to pursue further discovery regarding Plaintiff's work abilities and performance. Plaintiff previously testified that she was incapable of working in this industry because the homes are "all jumbled in my head." Exhibit D at 199. Norwegian should have the right to depose individuals who work at Dickens Mitchener to obtain their perspective on Plaintiff's responsibilities, capabilities and job performance. This includes, but should not be limited to, Stevie Baskerville, who recommended Plaintiff for the job, Jimmy Rountree, the broker-

in-charge, and Jennifer Saarbach, Plaintiff's mentor at the real estate agency. Exhibit Q at 80-83, 87. *Fox v. Safeco Ins. Co. of Illinois*, No. 8:16-CV-2665-T-23JSS, 2017 WL 3537593, at *4 (M.D. Fla. Aug. 17, 2017) (re-opening discovery for limited purpose of allowing deposition of untimely disclosed expert); *See Engle v. Taco Bell of Am., Inc*., No. 8:09-CV-2102-T-33TBM, 2011 WL 883639, at *2 (M.D. Fla. Mar. 14, 2011) (declining to strike a party's untimely-disclosed experts, but reopening discovery to allow plaintiffs to depose the experts before trial, reasoning that "[t]he reopening of discovery cures any prejudice that [plaintiffs] may have sustained due to untimely disclosures"); *StoneEagle Servs., Inc. v. Pay-Plus Solutions, Inc*., 2015 U.S. Dist. LEXIS 79971, at *9-10 (M.D. Fla. June 19, 2015) (electing to allow parties to reopen discovery to cure prejudice caused by late disclosures); *Bush v. Gulf Coast Elect. Coop*., 2015 U.S. Dist. LEXIS 68458, at 21 (N.D. Fla. May 27, 2015) (indicating a preference for reopening discovery to cure prejudice).

Of course, the Court has already held that the relevance of such information "cannot be disputed." Exhibit P at 10. As the Magistrate Judge observed, "Plaintiff claims lost wages and loss of earning capacity resulting from her injuries, and in order to properly review and rebut Plaintiff's claim for these damages, it is necessary for Defendant to possess the information regarding Plaintiff's employment and earnings." Exhibit P at 10. Plaintiff's vocational rehabilitation expert opined that Plaintiff would be limited to menial, unskilled work such as a "ticket taker." And yet, Plaintiff is a licensed real estate agent/broker who sat through a 68-hour course involving real estate and contract law and is entrusted by Dickens Mitchener and her clients to sell high-end properties. The Magistrate Judge emphasized the incongruity between Plaintiff's alleged brain injury and resulting diminished cognitive injury and her role as an agent/broker, observing that "the apparent ability to sell real estate is relevant **to her injuries in addition to her damages**." Exhibit P at 11 (emphasis added). The additional disclosure of more property sales

16

warrants more discovery so NCL can investigate the full extent of Plaintiff's real estate work and her job capabilities. *See Koch Foods, Inc. v. Sullivan*, 2017 WL 11380119, at *2 (S.D. Miss. May 25, 2017) (extending discovery period so plaintiff could review defendant's supplemental production and complete certain depositions).

### III. THE COURT SHOULD GRANT A CONTINUANCE OF TRIAL TO ALLOW NORWEGIAN THE OPPORTUNITY TO CONDUCT THIRD-PARTY DISCOVERY

Finally, Norwegian respectfully requests the Court to continue trial so Norwegian can continue its discovery efforts and provide its experts with a meaningful opportunity to review any additional material Plaintiff produces and to opine regarding Plaintiff's cognitive impairment claim. *See United States v. McCarthy Improvement Co.*, 2017 WL 443486, at *3 (M.D. Fla. Feb. 1, 2017) (noting that the court had "granted the defendants' motion to continue the trial to allow sufficient time to review the QuickBooks data" that the plaintiff should have produced "well before" it did). Allowing this case to proceed to trial without giving Norwegian the opportunity to access all documentation and testimony relevant to Plaintiff's claim that she suffered a life-changing injury would be contrary to due process principles and would deprive Norwegian of a fair trial. On the other hand, any impact upon Plaintiff resulting from the delay in this case proceeding to trial is far outweighed by the impact upon Norwegian if it does not have access to all relevant information and testimony regarding Plaintiff's injuries and ability to work. For this reason, good cause shown throughout this Motion warrants a continuance, and Norwegian requests the Court to remove this case from the February 14 trial docket and continue it to a future date.

### CONCLUSION

For the reasons outlined herein, Norwegian respectfully requests the Court to compel Plaintiff to comply with outstanding discovery obligations, to update or supplement all prior

discovery responses, for leave to pursue limited, third-party discovery regarding Plaintiff's work as a licensed real estate agent/broker, and for a continuance of trial.

## REQUEST FOR HEARING

Norwegian respectfully requests the Court to grant a hearing on this Motion in order to address the arguments raised herein and to answer any questions posed by the Court. Norwegian contends that approximately 60 minutes will be required for such a hearing.

## CERTIFICATION OF CONFERRAL

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to resolve the issues.

/s/ Jack R. Reiter
Attorney Name


Respectfully submitted,

| | |
|---|---|
| Jeffrey E. Foreman, Esq.<br>Michael C. Gordon, Esq.<br>Clyde Dunton-Gallagher, Esq.<br>One Biscayne Tower, Suite 2300<br>2 South Biscayne Boulevard<br>Miami, FL 33131<br>Telephone: 305-358-6555<br>Fax: 305-374-9077<br>jforeman@fflegal.com<br>kfehr@fflegal.com<br>mgordon@fflegal.com<br>ihormilla@fflegal.com<br>cgallagher@fflegal.com<br>porres@fflegal.com<br><br>*Counsel for Defendant* | /s/ Jack R. Reiter<br>Jack R. Reiter, Esq.<br>Florida Bar No: 0028304<br>jack.reiter@gray-robinson.com<br>GrayRobinson, P.A.<br>333 SE Second Avenue, Suite 3200<br>Miami, Florida 33131<br>Telephone: (305) 416-6880<br>Facsimile: (305) 416-6887<br><br>*Co-Counsel for Defendant* |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing was served upon all interested parties using this Court's ECF filing system this 20th day of January, 2022.

/s/ Jack R. Reiter